PARMENA M. CASE, RESPONDENT, v. ENOS CASE, APPELLANT, IMPLEADED, ETC.

*Conveyance set aside, although not induced by fraud or false representations — the evidence required to sustain a conveyance to a person holding a position of influence over the grantor — evidence as to personal transactions with an insane person.*

The plaintiff, a married woman, and the owner of a house and lot, conveyed the same to her brother, the defendant, without any consideration. He subsequently delivered to the husband of the plaintiff a mortgage upon the premises without any consideration. Subsequently he executed another mortgage upon the premises to the plaintiff, and thereafter conveyed the premises to plaintiff's husband.

In an action, brought to set aside the deed executed by the plaintiff to the defendant, and also the deed executed by the latter to plaintiff's husband, the referee did not find that the defendant was guilty of any fraud or fraudulent representation in his negotiations with the plaintiff for the conveyance of the property, or that the parties acted under any mutual mistake as to any fact or circumstance relative to the subject-matter under consideration, and the defendant claimed that, in the absence of intentional fraud, the plaintiff had not shown herself to be entitled to any relief either at law or in equity.

*Held*, that it was not necessary for the plaintiff to show affirmatively, in order to procure relief, that the defendant acted with a fraudulent intent in procuring the deed.

That a court of equity would interpose its authority and set aside instruments between persons occupying relations in which one party would naturally exercise

an influence over the conduct of the other; and that in this case, it appearing that the defendant held, as a brother, close and confidential relations with the plaintiff; that the transaction embraced her entire estate, so that at the age of sixty and upwards she was left penniless, and that while the negotiations were going on between these parties, which resulted in the making of this deed, plaintiff was in great distress of mind and anxious to preserve for her support and maintenance the house and lot and keep it from the control of her husband, with whom she did not live, the court would grant relief to the plaintiff and set aside a conveyance executed by her under such circumstances.

That, in cases where confidential relations exist between the parties, the person obtaining the benefit must show by the clearest evidence that the gift was freely and deliberately made.

That the claim by the defendant that the conveyance was made for the purpose of cheating and defrauding the husband out of his marital rights and interest in the property, and that for that reason plaintiff should be denied any remedy in regaining the property, could not be sustained.

Under what circumstances an objection, that a witness is incompetent to testify in reference to personal transactions with an insane person, is waived, considered,.

APPEAL from a judgment entered upon the decision of the Orleans county Special Term, setting aside a deed executed by the plaintiff to the defendant, Melville P. Wild, and also a deed from the latter to the defendant Case.

The plaintiff is the wife of the defendant Enos Case. She was the owner of a house and lot situated in the town of Clarendon, of the value of $1,300, and on the 19th day of January, 1885, conveyed the same to her brother, the defendant Wild, without consideration. Subsequently, on the twenty-second day of January, of the same year, Wild executed and delivered to the defendant Case a mortgage upon the said premises, to secure the payment of $600, which the referee found was also without any consideration to support it, and the same was canceled by the decree. On the fourth day of February, Wild executed another mortgage upon the premises, running to the plaintiff, for the sum of $900, and subsequently thereto, on the 5th day of May, 1885, Wild conveyed the premises to the defendant Case. The other facts bearing upon the questions reviewed by the court are stated in the opinion. The defendant Case appeared and answered, and the other defendants made default.

*Keeler & Salsbury*, for the appellant.

*John H. White*, for the respondent.

BARKER, P. J.:

The referee has found that the deed from the plaintiff to the defendant Wild was without consideration. The evidence supports this finding, although there is some proof in support of the admission contained in the deed, that a consideration was paid by the grantee and accepted by the grantor.

Our own examination of the case leads us to concur with the referee on this question. The conveyance being without any consideration, the next inquiry which naturally presents itself is, what was the object and purpose of the grantor in conveying all of her property to her brother, for she had none other than the real estate mentioned? The referee has found that the conveyance was the result of an arrangement entered into between the plaintiff and her brother, by which she was to convey the house and lot to him for the purpose of keeping the same away from the control and management of her husband, and to preserve the property for her own use. There is nothing in the history of the transaction which indicates that the plaintiff intended to make a gift of the property to her brother, as that would place her in a condition of absolute want and destitution. Every fact and circumstance discussed on the trial is in confirmation of the referee's finding, that the grantee assumed and promised and agreed to hold and manage the property for the use and benefit of the plaintiff.

The trustee disregarded his promise and his duty, and immediately on receiving the deed assumed to be the absolute owner of the house and lot, and incumbered the premises by a mortgage to the plaintiff's husband, and afterwards conveyed the same to him in fee, without any consideration for either conveyance. The judgment restores to the plaintiff the title to the property, free from the mortgage executed to her husband, and all the parties stand in the same legal relation to the property as they did before the conveyance.

The referee has not found that the defendant Wild was guilty of any fraud or fraudulent misrepresentation, in his negotiations with the plaintiff, for the conveyance of the property, or that the parties acted under any mutual mistake as to any fact or circumstance relative to the subject-matter under consideration. The appellant contends that, in the absence of intentional fraud on the part of Wild, the plaintiff failed to make a case for relief either at law or

in equity, and the judgment should be reversed. As the grantee made no promise in writing to take and hold the property for the use of the plaintiff, and as he was not guilty of any act or mis-statement, which, in the opinion of the referee, amounts to a positive fraud, the judgment must stand, if it is sustained, upon some other view of the case which amounts to a constructive fraud on the part of the grantee, according to well settled equitable principles, and for that reason the plaintiff was entitled to the relief granted. It was not necessary for the plaintiff to show affirmatively, in order to procure relief, that the defendant acted with a fraudulent intent in procuring the deed.

A court of equity will interpose its jurisdiction to set aside instruments between persons occupying relations, in which one party may naturally exercise an influence over the conduct of the other party. (*Boyd* v. *De La Montagnie*, 73 N. Y., 498.)

The rule as deduced from a great number of cases in England and this country is stated by Mr. Story as follows : " If confidence is reposed, it must be faithfully acted upon and preserved from any intermixture of imposition. If influence is acquired, it must be kept free from the taint of selfish interest and cunning and over-reaching bargains. If the means of personal control are given they must be always restrained to purposes of good faith and personal good. * * * The general principal, which governs in all cases of this sort, is that if a confidence is reposed, and that confidence is abused, courts of equity will grant relief. (Story's Eq. Jur., § 308.)

In speaking of the policy of the law, on this subject, he also says : " The law, with a wise Providence, not only watches over all the transactions of parties in this predicament, but it often interposes to declare transactions void, which between other persons would be held unobjectionable. It does not so much consider the bearing or hardship of its doctrine upon particular cases, as it does the importance of preventing a general public mischief, which may be brought about by means secret and inaccessible to judicial scrutiny, from the dangerous influences arising from the confidential relation of the parties." (Story's Eq. Jur., § 310.)

At the time the deed was executed and delivered the donee of this gift occupied a close confidential relation towards the plaintiff, who is his sister, and the transaction embraced her entire estate, so

that at the age of sixty and upwards she is left penniless. While the negotiations were going on between these parties, which resulted in the making of this deed, the plaintiff was in great distress of mind and anxious to preserve for her support and mainte-nance the house and lot and to keep it from the use and control of her husband, with whom she did not at that time live, and who had instituted proceedings for the purpose of having her declared insane and incompetent to transact business, and the same were pending at the time the conveyance was executed. During the consultations which preceded the execution of the conveyance, Wild declared to his sister that he would be true to her and to her inter-ests and do what was just and right to preserve the property for her own use and enjoyment. We omit to state, in detail, the facts and circumstances which tend to establish that confidential relations existed between the parties, and that the grantee possessed the con-fidence of the grantor and that the conveyance was made upon his suggestion and advice. The appellant, on the trial, did not take the position that the conveyance of the house and lot was intended as a gratuity on the part of the plaintiff and was made without the exer-cise of undue influence on the part of the donee, and that the con-veyance should be sustained as a voluntary gift; on the contrary, his position then was that the deed was to carry into effect a bargain and sale of the property and that a full consideration was actually paid therefor. In cases where confidential relations exist between the parties the person obtaining the benefit must show by the clearest evidence that the gift was freely and deliberately made. The burden is upon the person taking the gift to show that the transaction was fair and honest. (*Sears* v. *Shafer*, 6 N. Y., 268; *Ford* v. *Harrington*, 16 id., 285; *Boyd* v. *De La Montagnie, supra.*) This the defendants have signally failed to do.

The judgment should be sustained unless some other ground can be stated which is sufficient for denying the plaintiff relief. The appellant insists that the conveyance was made for the purpose of cheating and defrauding him out of his rights and interest in the property as the husband of the plaintiff, and for that reason the plaintiff should be denied any remedy for the purpose of regaining the title to the property. The general rule that courts will extend no remedy to a grantor or vendor of property to recover back from

the grantee or assignee the property transferred to cheat and defraud third persons, although the transfer was without consideration, as where the debtor conveys his property to another person with a purpose of cheating and defrauding his creditors has no application in the case. The appellant had no estate or interest in the premises, legal or equitable, at the time of the conveyance.

The plaintiff had a legal title to the premises, although they were bought and paid for by her husband, as they were conveyed to her by his direction and with his consent, and she had the right to sell or give away the same. The finding of the referee on this subject is that the conveyance was made to Wild on the strength of his promise to keep and preserve the premises from being squandered by her husband, not that the same was made to deprive him of his rights or interests in the property. The referee has requested by the defendant to find that the deeds were executed by the plaintiff, with the intent on her part to put the premises beyond the reach of her husband in any action or proceeding which he had or might thereafter institute to enforce any claim he might have to any interest therein, and he refused to so find. The referee has not found, nor was he requested by the appellant to find any fact which, in law or equity, would entitle the plaintiff to any share or interest in the premises. Nor are we able to discover any evidence from which a state of facts can be fairly deduced, which, in equity, would give him any right or interest in the lands as against the plaintiff's legal title. There is, therefore, nothing in the case calling for the application of the doctrine which the plaintiff invokes.

The appellant is in no position to question that part of the decree which keeps on foot the mortgage given to the plaintiff by Wild, which she had assigned to the defendant White for a limited purpose. On the trial, the plaintiff called and examined, as a witness in her own behalf, the officer who prepared the deed and took her acknowledgment, and who gave evidence on his direct examination tending to prove that the grantee, at the time of the delivery of the deed, paid to the plaintiff the money consideration expressed in the deed. He testified, in substance, that when the deed was ready for delivery he mentioned to Mr. Wild that the plaintiff was entitled to her pay, and that he then put his hand in his pocket and took out a package of brown paper and handed it to the plaintiff

and said : "There is your money ; count it and see if it is all right;" that the plaintiff accepted the package and unrolled the same and counted its contents, and he was sure there was some bank bills in the package; that Wild then asked the plaintiff if it was all right, and she made the reply that it was, and that they then left the office together. This witness was not cross-examined by the appellant. The plaintiff was then examined as a witness in her own behalf on the same subject, that is, relative to the payment of the money by. Wild to her on that occasion, and the appellant claims that her evidence was received in violation of the provisions of section 829 of the Code, as Wild was then insane. If the question had been presented to the attention of the trial court by a proper and timely objection, it would merit a careful consideration. It was conceded that at the time of the trial Wild, the grantee, was insane. Case, the appellant, claims under him. The fact of Wild's insanity was not disclosed to the court until after some of the rulings were made, which the appellant now claims to be erroneous. While the plaintiff was being examined as a witness, her counsel called her attention to the evidence which Fuller had given as to the payment of the pur-chase-money mentioned in the deed, and she stated that she heard the evidence as given by him. She was then asked this question : How much money was there in that transaction ; what was it that you counted there ? To this question the appellant made a general objection and the judge made no ruling, but remarked : "I think she may state what money she counted, if any * * * what she did and what money she counted." The counsel for the appellant then interposed the objection that the evidence related to a trans-action with an insane person, and was incompetent under section 829 of the Code. The objection was overruled and an exception taken by the defendant. After this objection was interposed and an exception taken, the case then states that "it was here conceded by the plaintiff that the defendant Wild was then insane, and had been since the 3d of December, 1885."

Then follows the balance of the plaintiff's evidence and the ruling of the court thereon, and the defendant's exception thereto, all of which is here copied, viz. : "I had some papers cut up and some-thing that looked like money, and had them in a roll and he handed

them to me, but he did not give me any money at all; I counted what was called money; he didn't give me any real money." [Some papers were then shown the witness.] "Those are the identical papers; my brother gave me no money at all." Q. "Is this the bundle here, of which Mr. Fuller swears your brother handed you at the time?" The defendant Case objected to the question on the ground that it called for a part of a transaction with an insane person, and upon the ground that the witness was incompetent.

By the COURT — "I think the better way is to ask her what she counted." Q. "What did you count, did you count those?" A. "Yes, sir; I looked them over in pretense." Q. "These things here which I hold in my hand?" A. "Yes, sir; yes, those papers were in my hand, there was no money about it; I had no money and my brother had none; the papers have faded now; they were good color when I had them, but now they are not and those are the identical papers."

By the COURT — "This is what you counted, is it?" A. "Yes, sir; I kept it down close and snug, and he never paid me any money in any shape or manner." The defendant Case here excepted to the admission of the testimony of this witness as to the transaction in reference to the money and the counting of it at Fuller's office.

By the COURT — "Yes, to that which is in evidence; the only thing in evidence, admitted, is that this package now in evidence is the package she counted; all the rest stricken out, simply that that is the package she counted; package of papers were marked Exhibit I."

It will be observed that the defendant took no exception to any ruling of the court, after it was brought to the attention of the court that Wild was insane. All the evidence given by the plaintiff, bearing on the question of payment and the manner of making it, was struck out by the court on its own motion, except the single statement made by the plaintiff, that the package produced and exhibited to her while on the stand as a witness, was the identical package, which her brother handed her, which, with its contents, was referred to and described by the witness Fuller while upon the stand. When this evidence was given no objection was made to its reception, nor was any motion afterwards made to strike the

same from the record. Excluding from the case the evidence which the court ordered to be stricken out, the plaintiff's evidence, which remained, does not contain any statement as to the contents of the package or the appearance of the same. The appellant took no exception to the ruling of the court, retaining so much of the plaintiff's evidence as has been mentioned. If the plaintiff was disqualified as a witness in her own behalf, from testifying as to the identification of the package, which she claimed was delivered to her by her brother, the appellant waived all objection to its incompetency, and cannot, on this appeal, claim that the same was erroneously received. We, therefore, do not pass upon the question whether the evidence was competent within the rule as stated in *Lewis* v. *Merritt* (98 N. Y., 206) and *Pinney* v. *Orth* (88 N. Y., 447).

The judgment must be affirmed, with costs.

HAIGHT, BRADLEY and DWIGHT, J.J., concurred.

Judgment affirmed with costs.

