ALSOP v. SOUTHOLD SAV. BANK et al.

(Supreme Court, General Term, Second Department.    December 12, 1892.)

GIFT CAUSA MORTIS — BANK DEPOSITS — EVIDENCE TO ESTABLISH.

Plaintiff claimed savings bank deposits, amounting to some $8,000, by virtue of a gift causa mortis from her aunt, the evidence showing two separate occasions of attempted gift,—one on the Friday before her death, at which plaintiff alone was present, and the other the succeeding Monday, at which plaintiff, her husband, and husband's brother were present.    Plaintiff testified that deceased, just after she was taken sick, took the bank books from a pocket and gave them to her.    Deceased said nothing about her health, and had said nothing previously about giving the books.    On the

second occasion, plaintiff said deceased told her to get the books, which she did, and that deceased then called upon the husband's brother to witness that she gave them to plaintiff. Plaintiff said she put the books back where she got them, but afterwards said she believed her husband's brother took them downstairs. He, however, testified that he did not take them, but that plaintiff herself produced them downstairs. Plaintiff testified that deceased whispered to her to bring the books. Her husband testified that he heard deceased ask for them. Deceased had lived with plaintiff three years, but no intimacy or any kind attentions were shown, and no mortal sickness was apparent on either occasion. Deceased left a mother and brothers and sisters. *Held* that, in view of the conflict, the gift should not be sustained.

Appeal from special term, Kings county.

Action by Elizabeth Alsop against the Southold Savings Bank and Mary J. Parr, administratrix. Judgment for plaintiff. Defendants appeal. Reversed.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

Roger M. Sherman, for appellants.

Albert A. Wray, (Joseph F. Mosher and Albert A. Wray, of counsel,) for respondent.

BARNARD, P. J. Eliza Grey died, intestate, in Queens county on the 22d day of April, 1891. She left a mother and brothers and sisters. She was a woman of about 65 years of age. She was a healthy woman up to the week before her death. She had lived for three years and over with the plaintiff, who was a niece of the deceased. The estate of the deceased amounted to about $8,000, almost entirely represented by savings bank books in three savings banks. This action is brought by the plaintiff to recover the amount on deposit in the Southold Savings Bank, and is based upon a title alleged to have been obtained by gift from the deceased on the Friday before her death. She died on the following Wednesday. The gift is claimed to have included the three books and the deposits shown upon them. The claim of title is supported by evidence of two separate transactions,— one on Friday before her death, at which the plaintiff alone was present, and the other on the following Monday night, at which the plaintiff and her husband and her husband's brother were present. This transaction purported to have been a repetition of the one of Friday preceding. The plaintiff testifies that the deceased went to bed on Friday. About 5 o'clock in the afternoon, and just after she had taken to her bed, she took out of a pocket in her flannel petticoat the three books, and gave them to her. That deceased was in the habit of wearing this flannel petticoat, and kept the books there. The deceased said not a word about her health. She had said nothing about giving the books before this. The plaintiff subsequently stated that she knew nothing of the books before deceased produced them. On the second occasion the plaintiff says that deceased told her to get the books, which she did, from her own room, and that deceased then said, calling upon plaintiff's husband's brother: "I give these books to Lizzie in the presence of you. I want you to be a witness to it." If the books were given on Friday, they were not the property of deceased on Monday. The plaintiff testifies that on the second occasion she put the books

back where she got them from. She subsequently stated that she believed M. L. Alsop, her husband's brother, took them downstairs. He testifies that he did not, but that plaintiff had them downstairs afterwards on the same evening, and he footed up the amounts. He also states the gift on Monday very differently. He states that the deceased stated that she had given the books before, but that she wanted him "to see me give them to her." Both witnesses testify to a delivery of the books, but the plaintiff says that she, after she received them from deceased, gave them to her brother-in-law. He says he did not take them, and that his sister-in-law produced them downstairs in the evening, as has already been stated. The plaintiff never looked at the books, or the amount due upon them, between the first gift and the second. The plaintiff testified that the deceased whispered to her to bring the bank books on the Monday night. Her husband states that he heard the deceased say: "Lizzie, I wish you would bring me the bank books." He says that his wife carried the books away with her out of the room, and fetched them downstairs in the evening, where they were added up. Under this condition of the evidence, the gifts ought not to be decreed sufficiently proven. No intimacy was shown between the parties. No kind attentions are proven and to be considered. There was no mortal sickness apparent either on Friday or Monday. The deceased was a woman whose savings had been accumulating during a long, active life as a housekeeper, and she is not proven to have been, by herself or others, deemed seriously sick on Friday, and, if that gift fails, the other should also. The three witnesses so vary on vital points in respect to their credibility that it is unsafe to take this large amount from her estate upon their testimony, considering their relation to each other and to deceased. The deceased is entitled to a vigilant scrutiny of the evidence, where she was in so unprotected a situation in respect to property which could be transferred by delivery. The property was in the plaintiff's house, and, after the death of deceased, it would be in the possession of the plaintiff and her family. The judgment should be reversed, and a new trial granted, costs to abide event. All concur.