GEORGE BLISS and Others, as Executors, etc., of ELIZABETH FOGG, Deceased, Appellants and Respondents, *v.* CHARLES B. FOSDICK, Individually and as Executor, etc., of ELIZABETH FOGG, Deceased, and Others, Respondents; HIRAM H. FOGG and Others, Respondents and Appellants.

*Gifts causa mortis — a gift during sickness presumed to take effect after the donor's death — revocation.*

Sound policy requires that the laws regulating gifts *causa mortis* should not be extended and that the range of such gifts should not be enlarged.

The presumption is that a gift made during a last sickness is intended to take effect at the donor's death even though it be not so declared.

Where a gift is made in apprehension of death it is a gift *causa mortis*, and such gift can be revoked by the donor in his lifetime. A revocation can be effected by a change of purpose and by undoing what has been done.

CROSS-APPEALS by the plaintiffs, George Bliss and others, as executors, etc., of Elizabeth Fogg, deceased, and by the defendants, Hiram H. Fogg and others, from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 6th day of February, 1895, upon the decision of the court rendered after a trial at the New York Special Term.

This action was brought to determine the title to 1,000 shares of the capital stock of the Gutta Percha and Rubber Manufacturing Company. The appellants claim that the title is in the executors of Elizabeth Fogg, and the respondents assert that the title is in Charles B. Fosdick, as trustee.

July 2, 1888, Elizabeth Fogg executed her last will and testament, in which George Bliss, Henry Parish and Duncan Smith were nominated as executors. After making various bequests, she devised and bequeathed the remainder of her estate to Hiram H. Fogg and John A. Phipps.

On November 12, 1890, the Gutta Percha and Rubber Manufacturing Company issued a certificate, No. 31, to Elizabeth Fogg for 1,000 shares of the stock of that corporation.

At some time prior to December 19, 1890, Mrs. Fogg's pastor, the Rev. Mr. Williams, handed to her a piece of paper on which he had written the following:

"I desire to bequeath the one hundred thousand dollars, which is now in the keeping of                    to the Young Women's Christian Association of New York city. This property is my private fortune and not a part of my late husband's estate, and I make this disposal thereof because I desire of my own act to make a gift to God's poor."

On the 19th of December, 1890, Mrs. Fogg executed a transfer of said shares printed on the back of certificate No. 31, of which transfer the following is a copy:

"For value received I have bargained, sold, assigned and transferred by these presents, and do hereby sell, assign and transfer, to Charles B. Fosdick the capital stock named in the within certificate, and I do hereby constitute and appoint Charles B. Fosdick my true and lawful attorney, irrevocably for me, and in my name and stead, to use, to sell, assign, transfer and set over all or any part of the said stock, and for that purpose to make and execute all necessary acts of assignment and transfer to one or more persons, to substitute with like full power.

"Dated 19*th December*, 1890.

"(Signed)                    ELIZABETH FOGG.

"Signed and acknowledged )
    in the presence of         )

            "ANNIE JULIA NORTON."

This transfer was executed in the forenoon of the day of its date at 359 Fifth avenue, and handed to Charles B. Fosdick. At this time Mrs. Fogg was confined to her bed by a sickness, from which she did not recover. The witness to the transfer—Annie Julia Norton—was the attendant of Mrs. Fogg, her confidential friend, and had the care of her from early in September, 1890, until her death, which occurred January 3, 1891.

After receiving the transfer of the above-mentioned certificate, Mr. Fosdick went directly to the Fifth Avenue Safe Deposit Company, where he had a conversation with George Montague, the president of that corporation, in which Mr. Fosdick told Mr. Montague of the purpose of Mrs. Fogg to give the avails of this certificate to charitable corporations, and thereupon Mr. Montague wrote on a small piece of paper: "Training School for Nurses, N. Y.,"

" Aged and Infirm Clergy Fund, N. Y.," as two worthy charitable corporations and handed the memorandum to Mr. Fosdick, who, later in the day of December nineteenth, left it with Mrs. Fogg.

The night of December nineteenth and twentieth was wholly spent by Mrs. Fogg and Miss Norton in selecting charitable corporations among which the avails of the aforesaid shares of stock should be divided. After making several memoranda, Miss Norton wrote the names of the corporations selected, aside from the names of the two corporations written by Mr. Montague, on a single piece of paper. Upon another piece of paper she wrote the names " John Peterson, Carl, his sister-in-law, Thomas Doran, Sallie Neilson, and a small breastpin." Miss Norton entered no sums opposite the names of those persons.

December 20, 1890, at about nine A. M., Mr. Fosdick called on Mrs. Fogg, having with him a writing which he devised, which had been copied by his bookkeeper, and which Mrs. Fogg then signed, of which the following is a copy :

" New York, 20*th Dec'r*, 1890.

" Mr. Charles B. Fosdick :

" Dear Sir.— I this day place in your individual possession, conveying to you, all my right, title and interest in One thousand (1,000) Shares Stock of the Gutta Percha and Rubber Manufacturing Company.

" From the proceeds thereof, I desire that you do appropriate the sum of One hundred thousand dollars, in the name of Elizabeth Fogg, in sums of Five thousand dollars each, to the various Charity Organizations of which a list is hereto annexed.

" Very truly yours,

" ELIZABETH FOGG."

This paper has remained in the possession of Mr. Fosdick since its execution. While Mr. Fosdick was in Mrs. Fogg's room he received from some one (from whom does not appear) the memorandum written by George Montague, the paper on which Miss Norton had written the names of certain corporations, and the paper on which she had written the names " John Peterson, Carl, his sister-in-law, Thomas Doran, Sallie Neilson, and a small breastpin."

Mrs. Fogg occupied a room on the second floor of the house. Just as Mr. Fosdick was leaving the residence he met Miss Norton in the

reception room on the first floor, and handed to her the three pieces of paper, and charged her to keep them safe, and thereafter she gave them to Mrs. Fogg.

After Miss Norton received the three papers from Mr. Fosdick he left the house and went to the Fifth Avenue Safe Deposit Company, where he placed the stock certificate and the transfer indorsed thereon in Mrs. Fogg's private box, where, after her death, it was found by her executors. No consideration was received by Mrs. Fogg for the transfer, and the shares have not been transferred on the books of the Gutta Percha and Rubber Manufacturing Company.

Later in the day of December 20, 1890, Miss Norton copied the names of the corporations from the two pieces of paper (one written by her the night before and one written by Mr. Montague) on to the paper on which the Rev. Mr. Williams had written the words above quoted. The following is a copy of the new or transcribed list of corporations, which is known in this litigation as Exhibit No. 3:

Exhibit No. 3.

" I desire to bequeath the one hundred thousand dollars which is now in the keeping of            to the Young Women's Christian Association of New York city. This property is my private fortune and not a part of my late husband's estate, and I make this disposal thereof because I desire of my own act to make a gift to God's poor.

" Diet Kitchen, N. Y.
" Training School for Nurses, N. Y.
" Aged and Infirm Clerg. Fund, N. Y.
" No " (in pencil.)   " St. John's Guild, of N. Y.
" Home for Working Girls, W. Eleventh street, N. Y.
" N. Y. Homeopathic Medical College and Hospital, N. Y.
" Unitarian Employment Society, N. Y.
" Home for the Aged, N. Y.
" Old Ladies' Home in Charlestown, Mass.
" Original." *

* This was on a small piece of paper. On one side was the writing to and including " Training School for Nurses, N. Y." On other side of page was all that follows.

Miss Norton at the same time copied the names of persons on to another piece of paper, which is known in this litigation as Exhibit L, and of which the following is a copy:

" EXHIBIT L.

" John Peterson............................ $4,000
" Carl Anderson (his sister-in-law)............. 3,000
(The words his sister-in-law erased in pencil and Anderson written above in pencil.)
" Thomas Doran........................... 500
" Sallie Neilson............................... 500
"And a small breastpin.

" Hassie Lamont (in pencil)................... 500 (in pencil.)
" Women's Emplt. Socy. (in pencil)...........
" Original."

As copied by her, this list closed with the word "breastpin." She then pinned the two pieces of paper, Exhibits No. 3 and L, together and gave them to Mrs. Fogg, and burned the pieces from which Exhibits No. 3 and L were copied.

In the afternoon of December twentieth Mr. Fosdick called on Mrs. Fogg, and, at her request, wrote a letter to Mr. William M. Prichard, a lawyer, asking him to call on Mrs. Fogg. On the next day (Sunday, December twenty-first) Mr. Prichard called, pursuant to the letter, Exhibits No. 3 and L were handed him, and he drafted a codicil, of which the following is a copy:

"I, Elizabeth Fogg, residing at number 359 Fifth Avenue, in the City of New York, having heretofore made and duly executed my last will and testament, do now make, publish and declare this codicil to the same.

"*First.* I give and bequeath to John Peterson four thousand dollars, to Carl Anderson three thousand dollars, to Thomas Doran five hundred dollars, to Sallie Neilson five hundred dollars, to Hassie Lamont five hundred dollars.

"*Second.* Out of the proceeds of sale of one thousand shares of the Gutta Percha and Rubber Manufacturing Company, which I regard as representing my own private fortune, and not a part of my late husband's estate, and to transfer which a power has lately been given to Mr. Charles B. Fosdick, I do hereby give and

bequeath the sum of one hundred thousand dollars, to be equally divided among the following charitable associations, to be applied to the benevolent uses administered by them, respectively, that is to say:

" 1. The Young Women's Christian Association of New York City.

" 2. The New York Diet Kitchen.

" 3. The Training School for Nurses connected with Bellevue Hospital.

" 4. The Fund for Aged and Infirm Clergymen, New York.

" 5. The Home for Working Girls situate in West Eleventh Street, New York.

" 6. The New York Homœopathic Medical College and Hospital.

" 7. The Society for the Employment and Relief of Poor Women.

" 8. The Home for the Aged, New York.

" 9. Old Ladies' Home, Charlestown, Massachusetts.

" I make these bequests because I desire of my own act to make a gift to God's poor, and it is my will that the same stand good to the beneficiaries intended, whether the above designations are or not their correct legal names, respectively.

" *Third.* I name and appoint my friend, Mr. Charles B. Fosdick, to be one of the executors of my will, in connection with the executors already named therein, or such of them as shall qualify and act as my executors.

" *Fourth.* In all other requests I do hereby ratify and republish my said will, and declare the same, as modified by this codicil, to be my last Will and Testament.

" In witness whereof I have hereunto set my hand and seal, at the City of New York, the twenty-first day of December, one thousand eight hundred and ninety (1890).

" Sd.   ELIZABETH FOGG.   [SEAL.]

" Subscribed at the end thereof by the said Elizabeth Fogg, and by her published and declared to be a codicil to her last Will and Testament in the presence of us, who in her presence and in the presence of each other and at her request, have hereunto subscribed our names as witnesses this 21st day of December, 1890.

" Sd. TIMOTHY F. ALLEN, 10 East 36th Street.

" Sd. ANNIE J. NORTON, 228 Warren St., Brooklyn.

" Sd. WM. M. PRICHARD, 128 E. 29th St., New York."

While preparing the codicil Mr. Prichard wrote in pencil the word " No " on Exhibit No. 3 at the left of the words " St. John's Guild of N. Y." On Exhibit L he canceled in pencil the words " his sister-in-law," wrote above the word " Anderson," and also wrote between the heavy black line and the word " original " the two lines now a part of Exhibit L.

By the codicil bequests are made to all the persons mentioned in Exhibit L, and to all the corporations mentioned in Exhibit No. 3, except that no bequest is made to St. John's Guild of New York.

After the codicil was executed Exhibits No. 3 and L were handed by some one to Miss Norton, who retained them for more than a year, and then gave them to Mr. Duncan Smith, one of the executors, who asked her for all of the papers left by the testatrix.

January 3, 1891, thirteen days after the execution of the codicil, the testatrix died, and April 15, 1891, her will and codicil were duly admitted to probate and letters testamentary thereon were issued to the four persons nominated in the will and codicil as executors thereof. She left a large estate, more than sufficient to pay all of the legacies. May 15, 1891, the residuary legatees and devisees executed and delivered to the executors the following instrument :

" WHEREAS, Elizabeth Fogg, late of the city of New York, on or about the 20th day of December, 1890, delivered to Charles B. Fosdick, Esquire, of the city of New York, now one of the executors of her will, one thousand shares of the stock of the Gutta Percha and Rubber Manufacturing Company, properly endorsed for transfer upon the books of the said company, accompanied by a paper conveying to him all her right, title and interest in said stock, and desiring him, from the proceeds thereof, to appropriate the sum of one hundred thousand dollars, in the name of Elizabeth Fogg, in sums of five thousand dollars each, to the various charity organizations of which a list was in said paper stated to be thereto annexed, while in fact no such list was annexed to said paper or delivered to said Charles B. Fosdick; and

" WHEREAS, thereafter, and on the 21st day of December, 1890, the said Elizabeth Fogg executed a codicil to her last will, which will and codicil were, on the 15th day of April, 1891, proved and admitted to probate before the surrogate of the county of New

York as the last will and testament of the said Elizabeth Fogg, deceased, in and by which codicil the said testatrix, among other things, gave and bequeathed out of the proceeds of sale of the said one thousand shares of the Gutta Percha and Rubber Manufacturing Company one hundred thousand dollars, to be equally divided among certain charitable associations enumerated in said codicil; and

" WHEREAS, the validity of said charitable bequests, or some of them, may be called in question by reason of the fact that the said codicil was made and executed less than two months before the death of the testatrix ;

" *Now, therefore,* we, Hiram H. Fogg and John A. Phipps, residuary legatees under the last will and testament of the said Elizabeth Fogg, deceased, in consideration of· the premises and of our mutual signatures hereto, do hereby consent to the payment by the said executors of each and all of the said bequests to charitable corporations made in and by the said codicil, irrespective of the validity or invalidity of any of said bequests, and authorize the executors of the said last will and testament to pay each and all said bequests, and we hereby waive all our and each of our claim to all and every part of the said one hundred thousand dollars so given and bequeathed by the said codicil of the said testatrix, but upon the understanding that the said Charles B. Fosdick shall relinquish all claim to the said stock so delivered by the said testatrix to him during her lifetime and execute all such papers as shall be necessary to vest the title to the same fully and completely in the executors of the said last will and testament.

" In witness whereof we have hereto set our hands and seals this 15th day of May, 1891.

" HIRAM H. FOGG.   [SEAL.]<br>
" JOHN A. PHIPPS.   [SEAL.] "

Upon this evidence the learned judge at Special Term held that by the transfer of certificate No. 31, executed December 19, 1890, by the writing dated December 20, 1890, and by the list of beneficiaries, Exhibit No. 3, and by the delivery by Elizabeth Fogg to Charles B. Fosdick of those three papers, " there was created an absolute and perfect gift of the said stock or of the proceeds thereof to the extent

of $100,000, and of the dividends thereof, from the said Elizabeth Fogg to the defendant Fosdick, in trust" for the following charitable corporations, that is to say, the ten corporations mentioned in Exhibit No. 3, to be divided equally among them.

*J. Hampden Dougherty*, for plaintiffs, appellants.

*Levi S. Tenney*, for residuary legatees and devisees, appellants.

*James E. Chandler*, *John W. Weed* and *William Hildreth Field*, for St. John's Guild, respondent.

*Edward B. Hill* and *W. N. Cromwell*, for Charles B. Fosdick, respondent.

FOLLETT, J.:

Under the release of May 15, 1891, the only parties having a pecuniary interest in this litigation are St. John's Guild and the residuary devisees and legatees, unless it should happen that a division, under the alleged trust, of the proceeds of the 1,000 shares among the ten corporations would give every one of the nine corporations mentioned in the codicil a greater sum than would the division of $100,000 among said nine corporations. The plaintiffs and Charles B. Fosdick are interested simply in carrying out the wishes of Elizabeth Fogg and in relieving themselves from liability.

There is no evidence, and, indeed, it is not asserted that Exhibit No. 3 was ever delivered to Charles B. Fosdick, or that he ever saw it until after the death of the testatrix, unless he saw it when the codicil was drafted, but at about nine A. M., December twentieth, he did see and hold in his hands for a few moments the three pieces of paper, the contents of which were afterwards and on the same day copied on to Exhibits No. 3 and L. In reaching the conclusion that the list of beneficiaries was delivered to Mr. Fosdick, the learned trial court must have held (1) that the three pieces of paper were handed by Mrs. Fogg to him, and (2) with the intent on her part to deliver them to him for the purpose of effecting a gift by means of the transfer of the shares of stock and those papers. The fact that the three papers were subsequently copied and burned in the presence of Mrs. Fogg, militates against the theory that she understood that they had been delivered to Mr. Fosdick and formed part

of a completed transaction. Mr. Fosdick testified on this trial, as he did on the first trial, that he did not consider that the list had been delivered to him, but supposed that the codicil would do away with all that had been done between them. The first paper relied on to establish a trust is the transfer of the shares, which is absolute in form. The second paper is the letter of December twentieth, signed by Mrs. Fogg and addressed to Mr. Fosdick. The first paragraph of this letter refers to the transfer made the day before, which Mr. Fosdick had with him when the letter was signed and delivered. The second paragraph reads as follows :

" From the proceeds thereof I desire that you do appropriate the sum of one hundred thousand dollars in the name of Elizabeth Fogg, in sums of five thousand dollars each, to the various charity organizations, of which a list is hereto annexed."

No list was ever annexed to this letter and no list naming twenty corporations was ever made by or for Mrs. Fogg. Mr. Fosdick testified that this letter was devised by himself and copied by his bookkeeper; that he (Fosdick) stopped at Mrs. Fogg's on his way downtown on the morning of December twentieth, when the letter was signed. Therefore, he must have been informed December nineteenth of her purpose to divide $100,000 among twenty charitable corporations. Mrs. Fogg and Miss Norton spent the night of December nineteenth and twentieth in a vain attempt to name twenty charitable corporations which should receive the sum, but abandoned the attempt, and Mrs. Fogg concluded to divide the sum among ten corporations. In order to uphold the trust declared by the judgment of the Special Term the letter of December twentieth must be eliminated from the case, as it is entirely inconsistent with the trust adjudged to exist. The only evidence left of an intent to establish a trust consists of the transfer of the shares of stock of Exhibit No. 3, and the testimony given by Miss Norton. From the time Mrs. Fogg's pastor wrote for her that which subsequently became the caption of Exhibit No. 3 down to the time when her codicil was executed, the idea of Mrs. Fogg, plainly disclosed by the evidence, was to bequeath the shares, or the avails of them, to charitable corporations, which she finally did. That which was done by the testatrix during the night of December nineteenth and twentieth, and during the day of the twentieth, was preparatory to

the execution of the completed codicil, and, perhaps, she was in
hopes that in case she died before the codicil was executed her
wishes would in some way be carried out.   The codicil refers
expressly to the shares as those transferred to Mr. Fosdick, and it
names every person and corporation mentioned on Exhibits No. 3
and L, except St. John's Guild, which, for some reason, she omitted
from the list of her beneficiaries.

The interview between Mrs. Fogg and Mr. Fosdick on the morn-
ing of December twentieth occupied about one-half hour, in which
time, according to the theory of the respondents, she completed the
execution of a trust in favor of the ten corporations mentioned on
Exhibit No. 3, and during the same half hour executed a declaration
of trust dividing the avails of the shares "in sums of five thousand
dollars each to the various charity organizations of which a list is
hereto annexed."    Thus, in the same half hour an attempt was
made to establish two wholly inconsistent trusts.    Trusts are not to
be established by such evidence.    The evidence, read in the light
of the circumstances surrounding the transaction, does not support
the conclusion that Mrs. Fogg intended absolutely to vest the title
of the shares in Mr. Fosdick as trustee, for the benefit of St. John's
Guild and the other corporations mentioned in Exhibit No. 3.

But, assuming that at the close of the interview between Mrs.
Fogg and Mr. Fosdick on the morning of the twentieth she intended
to vest him with the title of the shares for the purpose of giving the
proceeds to the ten corporations after her death, the judgment can-
not be sustained.    It is not asserted and cannot be successfully
maintained that Mrs. Fogg intended this gift to take effect in her
lifetime.

Miss Norton testified that during the night of December nine-
teenth and twentieth Mrs. Fogg believed that she was about to die,
and expressed the opinion that she would not live until morning.
The witness testified : "During that night she was apprehensive of
dying before morning.    That is what she said, and so expressed her-
self to me, although I personally did not think there was any imme-
diate danger of her death.    She did, however, express a danger of
dying before morning.    She was then in bed, and she remained
continuously in bed until the time of her death, on the 3d of Jan-
uary, 1891.    She had been in bed several days previously.    Q. And

she died during this same illness? A. Yes. Q. Without ever recovering? A. Yes. Q. Attended by both night and day nurses right along? A. Yes. Q. And continuously failing to the end? A. Yes."

"Sound policy requires that the laws regulating gifts *causa mortis* should not be extended, and that the range of such gifts should not be enlarged." (*Ridden* v. *Thrall*, 125 N. Y. 572, 581.) Such gifts are not favored by the courts. (*Delmotte* v. *Taylor*, 1 Redf. 417; *Rockwood* v. *Wiggin*, 16 Gray, 402; *Michener* v. *Dale*, 23 Penn. St. 59; *Hatch* v. *Atkinson*, 56 Maine, 326.)

The presumption is that a gift made during a last sickness is intended to take effect at the donor's death, even though it be not so declared. (Pom. Eq. Juris. § 1146.) If there was a gift it was made in apprehension of death — a *donatio causa mortis*. Such a gift can be revoked by the donor in his lifetime. (*Merchant* v. *Merchant*, 2 Bradf. 432, 444; *Bloomer* v. *Bloomer*, Id. 339, 347; *Parker* v. *Marston*, 27 Maine, 196; *Basket* v. *Haskell*, 107 U. S. 602; Pom. Eq. Juris. § 1146; 3 Redf. Wills [3d ed.], 343; 2 Kent's Com. 444.) A revocation can be effected by a change of purpose and undoing what has been done. Mrs. Fogg had burned the papers which were shown to Fosdick December twentieth, and the copy — Exhibit No. 3 — had been altered by writing the word "No" against the words "St. John's Guild," which, under the circumstances, was as potent evidence of her intent to revoke the gift previously intended, or made to that corporation, as though the word "revoked" had been written in the place of "No" or the exhibit burned. The stock certificate and the transfer indorsed thereon were then locked in her private box in the safe deposit company, and were as effectually in her possession and under her control as they would have been had they lain under her pillow. She declared in her codicil that the assignment of the shares to Mr. Fosdick was intended as a power to transfer them, and Fosdick testified that the codicil was read to him before it was executed and that he assented to its terms. Under the evidence we think, assuming that Mrs. Fogg intended, on December twentieth, to make a gift to St. John's Guild of $10,000, by means of a trust to take effect after her death, that it was effectually revoked on December 21, 1890.

It does not seem necessary to discuss the question whether a gift *causa mortis* may be made subject to a trust. (Story Eq. Juris. [13th ed.] § 607.)

The judgment should be reversed and a new trial granted, with costs to the appellants to abide the event.

O'Brien, J., concurred.

Van Brunt, P. J.:

I concur in the result. I do not think there is any sufficient execution of the trust declaration by the delivery of the list. I think that the evidence shows that the creation of the trust was never completed and it was abandoned, and the codicil to the will took its place.

Judgment reversed, new trial granted, costs to appellants to abide event.