## APPELLATE DIVISION,

## April, 1897.*

17 Ap.Div.
17    1
16ap556
17    1
29    44
17    1
37   293

Vol. 17.
App. Div.
17    1
47   474

17    1
53   606
53   607

In the Matter of the Judicial Settlement of the Account of FRANK
P. MANHARDT, as Removed Administrator of the Estate of
MARGARET SEITZ, Deceased.

FRANK P. MANHARDT, Individually, and as Removed Adminis-
trator, etc., of MARGARET SEITZ, Deceased, and as Administrator
with the Will Annexed, etc., of CHARLES L. MARY, Deceased,
Appellant; WILLIAM B. FRYE, as Administrator de Bonis Non
of the Estate of MARGARET SEITZ, Deceased, Respondent.

*Choses in action — derived by a wife from her husband's estate and standing at her
death in her name, pass to her administrator and not to the husband's adminis-
trator — proof required of a gift inter vivos where confidential relations exist.*

A testator by his will provided as follows : "I give and bequeath unto my
beloved wife Margaretta, all my real and personal property, to have and to hold
the same during her natural life, with full power and authority to sell or dis-
pose of the same if she shall see fit or think it for her interest to do so, but at
her decease whatever property remains after paying all expenses shall be
divided into three equal parts, one of those parts to go to her heirs, and two
parts to my heirs."

The wife, who was appointed executrix of the will, transferred into her own
name certain bank accounts of her testator and died leaving bank accounts and
a bond and mortgage, all standing in her name, and all representing property
derived from her husband.

*Held*, that the property should be administered by her administrator and not by
an administrator, appointed after her death, with the will annexed of her
husband.

---

* The other cases of this term will be found in volume 16 App. Div.— [REP.

A gift of a bond and mortgage *inter vivos*, asserted after the death of the alleged
donor by a person who held confidential relations with her, must be supported
by clear, strong, satisfactory and convincing evidence.  Such evidence is
not afforded by the uncorroborated testimony of the wife of the alleged
donee as to the delivery of the mortgage, where such donee has not asserted
his claim until, six months after the death of the donor, he has been required
by the Surrogate's Court to surrender certain securities, including such
bond and mortgage, held by him, and in the meantime has made admissions inconsistent with his claim, and has exhibited the bond and mortgage in
question as a part of the donor's estate.

APPEAL by Frank P. Manhardt, individually and as removed
administrator of the estate of Margaret Seitz, and as administrator
with the will annexed of the estate of Charles L. Mary, from a
decree of the Surrogate's Court of the county of Erie, entered in
said Surrogate's Court on the 21st day of July, 1896, upon the
decision of the court rendered in a proceeding settling his accounts
and directing him to pay over the funds and deliver the property of
the estate to William B. Frye. the administrator *de bonis non* of
the estate of Margaret Seitz.

In December, 1872, Charles L. Mary, a resident of the county of
Genesee in this State, died, leaving a last will executed November
26, 1872, and probated February 10, 1873, by which he disposed of
his estate as follows :

" After all my lawful debts are paid and discharged, I give and
bequeath unto my beloved wife, Margaretta, all my real and personal
property, to have and to hold the same during her natural life, with
full power and authority to sell or dispose of the same if she shall
see fit or think it for her interest to do so, but at her decease, whatever property remains after paying all expenses shall be divided into
three equal parts, one of those parts to go to her heirs, and two parts
to my heirs.

" Likewise I make, constitute and appoint my said wife, Margaretta
Mary, to be executrix of this my last will and testament, hereby
revoking all former wills by me made."

February 10, 1873, letters testamentary on the estate of Charles
L. Mary were issued by the Surrogate's Court of the county of
Genesee to Margaret Mary.

Charles L. Mary left a farm which his widow, by a deed, dated
November 4, 1880, conveyed to Frank Chapin in consideration of

$2,800. He also left a personal estate of about $5,000, of which, May 1, 1873, $1,333.15 stood to his credit in the Buffalo Savings Bank, and $1,143.45 stood to his credit in the Erie County Savings Bank. May 1, 1873, Margaret Mary, the widow, closed the account standing in the name of her husband in the Buffalo Savings Bank by drawing therefrom $33.15 and opening a new account in her name for $1,300, and on the same day she closed the account standing in the name of her husband in the Erie County Savings Bank by drawing therefrom $43.45 and opening a new account in her own name for $1,100. At the death of her husband, Margaret Mary had no property, except that derived from her husband, which she, during her lifetime, reduced to her own possession, and at the time of her death all that remained was held in her own name as an individual, and not as an executrix.

In 1875 Margaret Mary and Joseph Seitz intermarried, and before November 26, 1895 (the date not appearing), he died. After her marriage with Joseph Seitz she closed the accounts in the two savings banks standing in the name of Margaret Mary by having the balances transferred to her under the name of Margaret Seitz. November 26, 1895, she died intestate at the city of Buffalo, leaving Margaretha Miller, of Syracuse, N. Y., and Kate Perry, of Cincinnati, Ohio, her sisters, her only heirs and next of kin. December 3, 1895, letters of administration were issued by the Surrogate's Court of the county of Erie on her estate to Frank P. Manhardt. December 13, 1895, the Surrogate's Court of the county of Genesee issued letters of administration, with the will annexed, upon the estate of Charles L. Mary to Frank P. Manhardt.

Frank P. Manhardt has not filed an inventory of either estate, and February 14, 1896, the Surrogate's Court of the county of Erie removed him as administrator of the estate of Margaret Seitz, and February 18, 1896, appointed William B. Frye administrator *de bonis non* of said estate.

At the death of Margaret Seitz $3,000 was standing to her credit in the Erie County Savings Bank, and $2,889 was standing to her credit in the Buffalo Savings Bank. She also held the bond of Frank P. Manhardt, given to her July 16, 1887, for $2,000, payable July 16, 1892, with interest annually at the rate of five per cent, which bond was secured by a mortgage on real estate executed July

16, 1887, by Frank P. Manhardt and his wife. Said Margaret Seitz also held the promissory note of Emma Mary for $100, dated April 2, 1895. She also left household furniture, supplies and clothing of the value of about $300, all of which, except articles worth about $10, have been taken by and divided between her said sisters. The case does not show who are the heirs and next of kin of Charles L. Mary.

. March 11, 1896, upon the petition of William B. Frye, administrator *de bonis non* of the estate of Margaret Seitz, a citation was issued, returnable March 19, 1896, requiring Frank P. Manhardt to show cause why he should not settle his accounts and turn over the property in his possession belonging to the estate of Margaret Seitz to the administrator *de bonis non*. Upon the return of the citation Manhardt filed an account alleging that Margaret Seitz left no real or personal property, but there were in her possession articles of household furniture, clothing and supplies worth about $300, which had been taken by her sisters, except articles of the value of about $10, which were in his possession. He insisted that he was entitled to all the property of which she died in possession as administrator of the will annexed of the estate of Charles L. Mary. At the close of the proceedings the Surrogate's Court decreed that Frank P. Manhardt should deliver to the administrator *de bonis non* the books containing the accounts with the Erie Savings Bank and the Buffalo Savings Bank, the bond and mortgage, the note and all the property not then disposed of which was held in the name of Margaret Seitz at her death. The Surrogate's Court made and filed a decision separately stating the facts found and the conclusions of law, to which Manhardt filed exceptions, and thereafter a decree was entered, from which this appeal is taken.

*Hamilton Ward, Jr.*, for the appellant.

*William B. Frye*, for the respondent.

FOLLETT, J.:

But two questions are raised on this appeal : (1) Is Frank P. Manhardt entitled to retain in his possession, as administrator of the estate of Charles L. Mary with the will annexed, the choses in action which were in terms payable to Margaret Seitz and in her

possession at her death? (2) Is Frank P. Manhardt, the donee of the bond and mortgage executed by him to Margaret Seitz, to secure the payment of $2,000?

It is conceded that all the property devised and bequeathed by Charles L. Mary will, on the settlement of the estate of Margaret Seitz, pass, under the will of her husband, two-thirds to his heirs and one-third to her heirs. Nevertheless, she was, by the will, empowered to treat, in her lifetime, the estate left by her husband as her own, spend it, give it away, or save it. There was but one restriction; she could not devise or bequeath what was left at her death. During her lifetime, she reduced the property which her husband left to her possession, and held it in securities payable to herself individually. She could, in her lifetime, have maintained actions in her own name to recover on the choses in action in which the estate was invested. The estate is liable for her debts, which, so far as it appears, have not been ascertained nor even advertised for, pursuant to section 2718 of the Code of Civil Procedure.

In case specific property which belonged to an estate, or choses in action payable to the decedent, are in the hands of the representative at his death, they pass to the administrator *de bonis non*, and not to the representative of the deceased representative. So, property held in trust does not pass to the representative of the trustee, except that the representative is bound to care for it until a new trustee is appointed. These rules, however, have no application to the case at bar. There was no trust estate, and Margaret Seitz was not a trustee, and no one could call on her to account.

As early as 1687, it was held that, in case an executor takes a note for a debt due the estate, payable to himself, and dies, the note goes to his representative and not to the administrator, with the will annexed, of the first estate. (*Barker* v. *Talcot*, 1 Vern. 473; 3 Bacon's Abridg. [7th ed.] Title Executor, B. 2.) The rule decided in the case cited has never been departed from in England. (2 Will. Ex. [7th Am. ed.] *792.)

As was held by the learned surrogate, the first question involved in this case was settled by *Caulkins* v. *Bolton* (31 Hun, 458; affd., 98 N. Y. 511), which arose out of the following facts: Zara Comstock died, bequeathing the use of all his property to his widow, Lucinda Comstock, for her support during her natural life, with the

right to use any part of the principal. Letters testamentary were granted to her. She loaned $1,000 of the money received from her husband to Ezra Caulkins, taking his bond and mortgage, payable to herself individually. She died intestate, the bond and mortgage being then unpaid. October 31, 1881, letters of administration, with the will annexed *de bonis non*, were granted to Danforth D. Bolton and Mary L. Scriber. November 14, 1881, the same surrogate granted letters of administration upon the estate of Lucinda Comstock to John F. Gray. Bolton and Scriber got possession of the bond and mortgage. John F. Gray claimed that the bond and mortgage were assets in his hands. The mortgagor, being willing to pay the mortgage and uncertain as to whom payment should be made, brought an action making the rival representatives parties. They defended, Bolton and Scriber claiming that the bond and mortgage belonged to them as representatives of the estate of Zara Comstock, the testator; John F. Gray claiming the bond and mortgage as administrator of Lucinda Comstock. It was held that the bond and mortgage belonged to John F. Gray, the administrator of Lucinda Comstock, and not to the administrators with the will annexed of Zara Comstock. This is decisive of the case at bar.

The same rule was decided in *Beall* v. *New Mexico* (16 Wall. 535). (See, also, 3 Redf. Wills [3d ed.], 103, § 10, par. 8; 2 Will. Ex. [7th Am. ed.] *794, note, *832, note.)

Is the evidence sufficient to establish a valid gift of the bond and mortgage by Margaret Seitz to Frank P. Manhardt? The Surrogate's Court determined this issue in favor of the administrator and against Manhardt. "Where an appeal (from a decree of a Surrogate's Court) is taken upon the facts, the appellate court has the same power to decide the questions of fact which the surrogate had." (Code Civ. Proc. § 2586.)

The notice of appeal does not state whether the appeal is " taken upon questions of law or upon the facts or upon both," as authorized by section 2576 of the Code of Civil Procedure, but it is assumed by the counsel of the litigants that the appeal is upon both questions, and the case will be considered on that theory.

Margaret Seitz became ill on Saturday, November 25, 1893, at her rooms on Walnut street in the city of Buffalo; at five o'clock her case became critical and at eleven o'clock she was taken to the

Buffalo General Hospital, where she died the next day, Sunday, November 26, 1893. Her age and the nature of her illness are not disclosed by the record. The appellant asserts that "on Friday, two weeks before Mrs. Seitz died" (which would be November 10, 1893), she gave him the mortgage. The evidence does not show that she was ill at this time or that she was apprehensive that death from any cause was likely soon to overtake her. The gift sought to be established is a gift *inter vivos,* and is to be governed by the rules relating to that species of gift instead of those relating to gifts *causa mortis.* The chief difference between the two is that a completed gift *inter vivos* is irrevocable, while a gift *causa mortis* may be revoked by the donor and is revoked by the recovery of the donor from the sickness during which the gift was made. To establish this gift the appellant first seeks to show a sufficient motive on the part of the alleged donor to make it. He was permitted to testify, over the objection of the administrator, that when three years of age his mother died, after which he lived with Margaret Mary for a year and a half; then lived in Connecticut for a while (how long does not appear); then returned and lived with her until he was fourteen years old. That after her marriage with Joseph Seitz, which was in 1875, he learned the trade of a harnessmaker of him. How long he lived with Margaret Mary before her marriage with Joseph Seitz, or how long he lived with Mr. and Mrs. Joseph Seitz does not appear. After serving his apprenticeship he went to Buffalo and worked at his trade, and about a year after he went to that city Mr. and Mrs. Seitz moved to Buffalo and he boarded with them until his marriage, the date of which is not shown. It does not appear that the alleged donor and donee were in any wise related.

Josephine Manhardt, the wife of the appellant, testified that "Mr. Manhardt always did her (Mrs. Seitz') business, what business a woman has who has a little money to look after, and I always did what little things I could for her and see to her cooking so far as I could during the week and brought her different things almost every day." Her attentions were on an occasion, as we understand the evidence, when Mrs. Seitz was confined to her bed for two weeks from the effects of a fall. At the time those services were rendered the mortgage was outstanding and interest was thereafter paid thereon.

Mrs. Manhardt testified that about two years before the trial her husband made a payment of $200, which Mrs. Seitz gave to their children. In respect to the gift she testified that on Friday, two weeks before Mrs. Seitz died, she and her husband called upon Mrs. Seitz at her rooms, and that before they left she saw Mrs. Seitz give her husband the mortgage and heard her say that it was his; that he was deserving of it, and that she intended to give it to him; that Mrs. Seitz said that when she came to their place it would be canceled. Her husband took the mortgage, thanked her, and carried it home. This is the only evidence tending to support a gift and a delivery of the mortgage.

It was shown, and was not disputed, that the evening Mrs. Seitz was taken to the hospital Mr. Manhardt took possession of the satchel in which she kept her papers and carried them home with him, and has ever since retained them.

Mr. Stern testified that in January, 1896, he called on Manhardt in the interest of one of the sisters of Mrs. Seitz and asked what property she left; that Manhardt exhibited the bank books and produced the mortgage, and said that the mortgage and the bank books were the only property he had belonging to the estate.

Theresa Miller, a niece of Mrs. Seitz, testified that she and her mother attended the funeral, and that after it Mr. Manhardt and her mother had a conversation about the estate. " He (Manhardt) asked us if we knew what Margaret Seitz was worth, and my mother said about six thousand dollars, and he said more; what she saved from six thousand dollars that went to her two sisters, and I owed her $1,300.00." Mrs. Miller, the mother of the last witness and a sister of Mrs. Seitz, testified to the same conversation, and also that Manhardt subsequently said at the office of Mr. Greiner that the estate amounted to between $7,500 and $8,000. After this evidence had been given Manhardt was recalled and admitted that he made these statements, but said in explanation that he did not claim the mortgage, because, it not having been discharged of record, he thought it belonged to the estate, and that he never claimed that the bond and mortgage had been given to him until after he had consulted counsel. The significance of this testimony is greatly emphasized by the course of the proceedings in the Surrogate's Court. By the account sworn to by Manhardt March 30, 1896, he did not claim to be the owner

of the bond and mortgage, and although the respondent, by his objections to Manhardt's account, expressly claimed that it belonged to the estate, no reference was made to Manhardt's ownership until after April 20, 1896, when the Surrogate's Court filed its memorandum, holding that Manhardt must turn over the assets of the estate to the respondent. After this, and on the twenty-seventh of April, Manhardt asked to have the hearing opened so as to give evidence upon the question of ownership of the bond and mortgage. On the nineteenth of May Manhardt filed a verified answer alleging that he was the lawful owner of the bond and mortgage, and the proceedings were opened "for the purpose of allowing testimony to be given upon the question of the gift of the mortgage from Margaret Seitz to Frank P. Manhardt, and on no other subject." Subsequently the testimony hereinbefore referred to was given, and September 16, 1896, a decision stating separately the facts found and the conclusions of law upon all the issues was filed. The fact that the appellant never claimed to be the owner of the bond and mortgage until after he had been beaten in the Surrogate's Court, upon the issue as to whether he or the respondent was entitled to administer upon the estate of Margaret Seitz, is very significant.

A gift *causa mortis* takes effect only upon the death of the donor, is deemed to be in the nature of a legacy (*Miller* v. *Miller*, P. Wms. 356; *Jones* v. *Brown*, 34 N. H. 439; Hunt. Rom. L. [2d ed.] 913; 3 Redf. Wills [3d ed.], 321; 1 Will. Ex. [7th Am. ed.] 887 *et seq.*; 21 Am. L. Rev. 732) — and it may be doubted whether Margaret Seitz had any greater right to dispose of any part of the estate by such a gift than she had to dispose of it by her will, which seems to compel the appellant to take the position that he acquired the bond and mortgage by a gift *inter vivos*, which position seems not entirely consistent with his position on the first question, that Margaret Seitz was the trustee of the estate for the remaindermen, with the right to use so much of it only as was necessary for her support. A trustee cannot dispose of the trust estate in any way not authorized by the terms of the trust.

The appellant asserts that the relations existing between Margaret Seitz and himself were of a confidential nature, and thus he brings himself within the rule that when such relations exist between an

alleged donor and donee, and the latter, after the death of the former, claims title to the estate or to part of it, by a gift, it must be established by evidence which is clear, strong, satisfactory and convincing. In such cases the law " does not so much consider the bearing or hardship of its doctrine upon particular cases, as it does the importance of preventing a general public mischief which may be brought about by means secret and inaccessible to judicial scrutiny, from the dangerous influences arising from the confidential relation of the parties." (Story's Eq. Juris. § 310; *Case* v. *Case*, 49 Hun, 83.) The rule in such cases is that the gift must be established by evidence possessing the highest degree of probative force. All the authorities agree in this though the rule is expressed in various forms. (*Scoville* v. *Post*, 3 Edw. Ch. 203; *Grey* v. *Grey*, 47 N. Y. 552; *Grymes* v. *Hone*, 49 id. 17; *Shakespeare* v. *Markham*, 72 id. 400; *Lewis* v. *Merritt*, 113 id. 386; *Ridden* v. *Thrall*, 125 id. 572; *Devlin* v. *Greenwich Savings Bank*, Id. 756; fully reported, 35 N. Y. St. Repr. 922; *Van Vleet* v. *McCarn*, 18 id. 73; *Gaylord* v. *Gaylord*, 7 id. 703; *Jennings* v. *Davis*, 31 Conn. 138; *Woodburn* v. *Woodburn*, 23 Ill. App. 289; Pom. Eq. Juris. § 1146.)

In *Grymes* v. *Hone* (*supra*) it was said : " As there is great danger of fraud in this sort of gift, courts cannot be too cautious in requiring clear proof of the transaction. This has been the rule from the early days of the civil law (which required five witnesses to such a gift) down to the present time."

The gift in the case at bar is sought to be sustained as a gift *inter vivos*, but when such a gift is not asserted until after the death of the alleged donor the evidence to sustain it must be as clear, strong and convincing as the evidence required to sustain a gift *causa mortis*. The rule in both cases rests upon the principle that gifts first asserted after the death of the alleged donor are always regarded with suspicion by the courts. The uncorroborated evidence of the wife of the alleged donee has not usually been regarded as sufficient to establish a gift *causa mortis*. In *Ridden* v. *Thrall* (*supra*) it was said : " Such a gift should be proved by very plain and satisfactory evidence ; and if the case depended upon the evidence of the wife alone any court might well hesitate to uphold the gift." In *Farian* v. *Wiegel* (76 Hun, 462) the court refused to sustain an

alleged gift which was attempted to be established by the uncorroborated evidence of the wife of the alleged donee. In the case at bar there is no evidence corroborating that given by the wife. The possession by the appellant of the bond and mortgage, under the circumstances of the case, amounts to nothing, for when the alleged donee has access to the property and papers of an alleged donor during the last sickness, or after the donor's death, the fact that the alleged donee has the manual possession of the thing alleged to have been given has little, if any, weight on the issue whether the thing was given. (*Conklin* v. *Conklin*, 20 Hun, 278; *Grey* v. *Grey*, 47 N. Y. 552; *Matter of Bolin*, 136 id. 177; *Kenney* v. *Public Administrator*, 2 Bradf. 319; *Drischler* v. *Van Den Henden*, 17 J. & S. 508; *Alsop* v. *Southhold Savings Bank*, 50 N. Y. St. Repr. 672.)

A sound policy requires that the rules which the courts have adopted for the protection of the estates of decedents from depletion by alleged donees should not be relaxed. (*Bliss* v. *Fosdick*, 86 Hun, 162; affd., 151 N. Y. 625.) These rules should be rigorously applied in case a gift *inter vivos* is asserted for the first time after the death of the decedent.

In the case at bar the alleged gift was not asserted until nearly six months after the death of the decedent. On the day she was buried Manhardt admitted that he owed her $1,300, the amount which he claims was due on the bond and mortgage; subsequently he made admissions at Greiner's office inconsistent with his present claim; in January, 1896, he exhibited the bond and mortgage as part of the decedent's estate, and March 30, 1896, when he verified his account, he did not assert that he owned the bond and mortgage, and he made no claim of title until after the Surrogate's Court decided that he must surrender the securities to the respondent.

Attention is called to the exceptions taken by the appellant to the exclusion of evidence on pages 47, 54 and 66 of the record, which relate to evidence bearing on the question whether the appellant or the respondent was entitled to administer the assets, and do not relate to the question of the gift. The evidence excluded was offered after the first question had been determined, and because the case was not opened for the trial of that issue the evidence was properly excluded.

The decree of the Surrogate's Court should be affirmed, with costs against the appellant personally.

GREEN, J., concurred; WARD, J., not voting.

ADAMS, J.:

I concur in the opinion of FOLLETT, J., so far as the same discusses the question relating to the rights of the respective parties to the possession of the remainder of the estate of Charles L. Mary, deceased; and I concur in the conclusion reached in respect of the title to the bond and mortgage claimed by the appellant, Frank P. Manhardt, as donee of Margaret Seitz, deceased.

HARDIN, P. J.:

It appearing that the appellant personally claimed to be the owner of the mortgage, and brought this appeal to assert that right, he, therefore, may be charged personally with the costs of this appeal. The affirmance of that branch of the case I favor for reasons stated by FOLLETT, J.

(2) It is my understanding that the decision recommended by the opinion of FOLLETT, J., will not prejudice the right of the heirs of Charles L. Mary and Margaret Seitz, and to avoid any question as to the effect of the decision of the surrogate in that regard, the decree may properly be affirmed without prejudice to the rights of such heirs.

So much of the decree as is appealed from affirmed, without prejudice to the heirs of Mary and Seitz in the distribution of the funds, with costs against the appellant personally.