Scoville, public administrator, &c. v. Post and others.

---

Where bank notes are in the possession of an intestate at the time of death, a party, claiming them as a gift, will have to prove the gift by clear and indisputable evidence.

Third persons, who lend themselves to be receivers of moneys belonging to and found in the possession of an intestate, but claimed wrongfully by a party as a gift, will be liable as principals to refund the amount.

SCOVILLE
*v.*
POST.

April 25.
1838.

*Gift.*

JULIA LYNCH had died intestate in the city of New-York; and letters of administration upon her estate were granted to the public administrator.

The bill was filed by him to recover the amount of two thousand five hundred dollars, which the defendants were charged with having abstracted from the bureau of the intestate. There was also a charge that the defendants rummaged the house of the deceased and took possession of the property therein; carrying away and converting to their own use sundry articles.

The defendants denied most of these allegations in the bill, but admitted that they found in a drawer, in two parcels, twenty-five hundred dollars in bank bills; also, that some articles of household furniture and clothing were carried away. Two of the defendants, the Messrs. Post, admitted that they took the money and deposited it in bank for safe keeping, but said that when they found there was difficulty about it, they returned the same to the defendant Catharine Blaw and that this occurred after the public administrator had taken possession of the effects of the deceased. That the defendant Catharine Blaw claimed the money as her own at the time it was returned to her.

The testimony disclosed the facts that when the money was found in the drawer of the deceased by the defendant Catharine Blaw, the Messrs. Post were present and conversant with what was going on in the house; and that one of them undertook to exercise an ownership and control of the property in the house after the death of Mrs. Lynch.

Mr. *Nash,* for the complainant.

Mr. *P. A. Jay,* for the defendants.

Feb. 18,
1839.

THE VICE-CHANCELLOR :—There is nothing in this case worth contending for, except the sum of two thousand three hundred dollars in bank bills, which were found in the drawers of the bureau or wardrobe of the deceased Mrs. Lynch, immediately after her death.

This money is claimed by the defendant Catharine Blaw, as her own money, once given and delivered to her by the intes-

tate, but which she had delivered back " with a request that it might be retained by the intestate for safe keeping." This statement in the answer, unaccompanied as it is by any particulars of time, place or circumstances to show a consummated valid gift or an actual intention to make it such a gift as passed the title or right to hold, is itself suspicious. Upon this naked statement, even if it were responsive to the bill, the court could hardly be justified in giving to the transaction the effect of a gift which either law or equity would uphold : *Cotton* v. *Missing*, 1 Mad. C. R. 176 ; *Hooper* v. *Goodwin*, 1 Swanst. 486. But the answer, on this point, setting up a gift and right of ownership, is not responsive ; and this defendant is bound to prove the fact that the money was hers, and that too by clear and indisputable evidence, before she can be permitted to take and hold it as her own. So far from there being any such evidence in the cause, the facts, as disclosed, and the circumstances attending the search for money, coupled with the conversations that took place afterwards and the course pursued by the defendant Catharine Blaw and her nephews and the co-defendants Post, all go to show that the idea of its being her money (by previous gift) was an after-thought and not one which entered their minds while they were searching for it or when it was first found or afterwards when Mr. Post was inquiring at the surrogate's office about the right to administration. And, as far as the declarations of Mrs. Lynch, concerning the disposition she intended to make of the money in her possession, are proved, it appears that her faithful housekeeper, Hannah Geritte, was the person on whom it was intended to be bestowed and not Catharine Blaw.

There appears to me but a flimsy pretext for claiming this money. And whatever may have been the friendship subsisting between her and the deceased and however well founded were her expectations of being provided for by will, her conduct cannot be deemed otherwise than improper and reprehensible in law, in attempting to convert this money to her own use, when she found that expectation not fulfilled.

She is bound, at all events, to account for and pay over the money.

The next question is, whether the other defendants, W. Post

and J. Post, have so far identified themselves with her in this transaction as to be equally liable.

They received the money from her in the first instance, that is, J. Post received it from Catharine Blaw and handed it to his brother, the other defendant, at her request, for safe keeping, knowing how and from whom she had obtained it. It does not appear that she set up the pretext, at that time, of being the actual owner; but even if she did, it is manifest, from what afterwards transpired in the surrogate's office, that they did not believe or consider the money belonged to her. If such were their belief or understanding, why make the inquiry, as proved by Skidmore, upon stating the case hypothetically : whether a debtor or person, having money in hand belonging to an estate, was not entitled to administer in the absence of relatives ? If she were already the owner, why this anxiety on the subject of administering the fund ? Why speak of the intention to make a will and bequeath the property ? Wherefore mention how that intention was defeated solely by the suddenness of death ? And why complain of the hardship of the case and the injustice of the law which would not permit, under such circumstances, the person to keep what they had got, when the intention to give to such person would be proved ; and, when informed that the public administrator was the person on whom the right devolved, why allege there was no moral objection, even though there might be a legal one, to disclose and deliver up the property and that the administrator might find it out the best way he could ?

All this seems to be entirely inconsistent with any belief on their part that Catharine Blaw was entitled to keep the money. Hearing, as was stated in their answer, that there was difficulty about it, Mr. W. Post afterwards handed the money back to her. When this re-transfer took place, whether it was before or after the bill was filed, does not appear : but it is reasonable to conclude that it was after the defendants Post had been at the surrogate's office, and with the information they there acquired, coupled with the knowledge they previously had of the finding of this money and of the improbability of Catharine Blaw being able to make out a title to it, seems to me to have made it incumbent on them, at least, to take the same care of it that they

did of the other sum of two hundred dollars which was first found and which they handed over to the administrator.

Besides, there is pretty strong evidence in this case of collusion, between all the defendants, to prevent the money in question from going into the hands of the public administrator. Their studied concealment of the facts in relation to its existence and the circumstances under which it was returned to the defendant Blaw, after having been deposited in bank by W. Post, go to show that the object was to embarrass, if not entirely to defeat the administrator in his attempt to recover it.

The latter was driven to the necessity of filing the present bill for a discovery of portions of the assets, with which these parties had meddled; and if the money is lost by the defendant, Blaw's inability to produce it at this time, the loss is to be attributed to the other defendants. They must, therefore, be held responsible with her for the principal, with interest upon it from the time of the grant of letters of administration to the public administrator; and also, for the costs of this suit.