KENNEY *vs.* THE PUBLIC ADMINISTRATOR.

*In the matter of the estate of* DAPHNE MYERS, *deceased.*

Gifts, *causâ mortis,* should be sustained by the most satisfactory testimony. Evidence of the donee, uncorroborated by circumstances, is insufficient to establish the donation. Delivery is essential to the validity of a *donatio causâ mortis,* and is corroborative proof that the donation was made ; but possession does not prove delivery, when the claimant has had opportunities of obtaining possession wrongfully.

Where the alleged donee was an attendant on the deceased during her last sickness, and both before and after her death denied any knowledge of the subject of the alleged gift, *Held,* that having assigned her rights to her son and become a witness, there was not, under the circumstances, such clear proof as the nature of the case required.

ROBERT B. ROOSEVELT, *for Petitioner.*

The bank book in this case was a Savings Bank Book, which was the voucher and evidence of Daphne Myers' interest in the bank, and without producing which to the bank no money, not even checks, could be drawn.

The law is, that notes and bills, to bearer or to order, whether endorsed or not, bonds and mortgages, whether assigned in writing or not, are subjects of gift *causâ mortis.* (*Harris* vs. *Clark,* 2 *Bar.,* 94, *vide pp.* 98 *and* 101 ; 3 *Brin.,* 366 ; 8 *Shep.,* 185.)

A gift of the note of a third person is a symbolical delivery of the property. (*Coutant* vs. *Schuyler,* 1 *Paige,* 316 ; 24 *Pick.,* 261.)

The delivery of any instrument by which the donee can obtain the money, or without which the donor cannot obtain it, is a good gift *causâ mortis.* (*Harris* vs. *Clark,* 3 *Coms.,* 93, *vide pp.* 109, 114.)

The court will more readily construe any act into an assignment of a fund, if it assigns the whole, as in this case,

than if it assigns a part. (*Vide same case, p.* 107, *latter part of* § II.)

Ellen Kenney, though carefully cross-examined, was contradicted in no point; and it can only be urged against her that she denied knowing anything about the book, lest it should be taken from her, by Mr. Riggs or the public administrator. She is nowise implicated in removing any property, if that was done; and both Mr. Riggs and Julia Bliss told her to stay with deceased. Her ignorance is the excuse for her fears. If Daphne Myers really thought her property was not safe, she could have given it in charge to Mr. Riggs. Her not doing so, confirms the idea that she had previously given it to Ellen Kenney. There are no equities in favor of the State against this poor woman's son, there being probably no relation, and certainly no other claimant.

PETER B. SWEENY, *Public Administrator, in person.*

THE SURROGATE. The petitioner claims the benefit of an alleged *donatio causâ mortis*, by virtue of an assignment from his mother, Ellen Kenney, the donee. Mrs. Kenney, the assignor, states that she attended the decedent during her last illness; and that some five days before her death, she gave her a Savings Bank Book, saying, "If she got well I was to return it to her, and if she died it was mine." This, it is contended, establishes a gift of the sum then on deposit in the Savings Bank. The sole witness produced to substantiate the claim, is the alleged donee; and on the other side it is shown by several witnesses, that since the time Mrs. Kenney states the book was delivered to her by the deceased, and as well after as before the death of Daphne Myers, she repeatedly denied knowing any thing about the bank book, when interrogated on the subject.

Gifts *causâ mortis*, should be sustained by the most

satisfactory testimony, or the door will be opened widely for fraud and imposition. It would be a precedent of the most dangerous character, to hold such a gift valid on the naked evidence of the donee, uncorroborated by any circumstances. Possession of the book does not prove delivery, because the party had abundant opportunity to get it under her control without the consent of the deceased. By the civil law, donations of this kind were required to be made in the presence of five witnesses, that being the number requisite to the formal execution of a codicil. (*Cod.*, *Lib.* 8, *Tit.* 57, §4; *Domat.*, §3481, *Strahan's Trans.*) The common law does not recognise this rule; and there have been cases in equity, on a bill filed against the donee, sustaining the gift on the answer of the donee and the possession of the property. Delivery is an essential requisite; and it is an important circumstance in the proof, when means of obtaining possession wrongfully have not existed. The conduct of the donee is also very material; and here she was guilty of concealment and falsehood, at a period when the validity of the gift, if the transaction was fair and honest, might have received the sanction of the decedent before competent witnesses. This circumstance, and her denial of any knowledge of the bank book, connected with the fact that this application has been made by her son under an assignment from her, must shake the reliance of the court upon her testimony. I should regret to be understood as saying anything more than that her conduct has been such, under the circumstances, as to lead to distrust; and since it seems that "the clear policy of the law is against the encouragement of gifts of this nature" (*Harris* vs. *Clarke*, 3 *Ooms.*, 121), and the spirit of the statute, relative to evidence in actions against executors and administrators by assignees, is hostile to the examination of the assignor (*Code*, § 399),—under all these circumstances, I cannot refrain from saying, that the petitioner has failed in adducing that clear proof

which the nature of the claim requires. This conclusion, renders it unnecessary to consider the proposition that a gift and delivery of a savings bank book, constitutes a valid *donatio causâ mortis.* The petition is denied on the ground of insufficient proof.