PUSEY et al. v. BRADLEY et al., appellants.

*Jurisdiction — injunction — bankruptcy proceedings — mechanics' lien.*

A firm of contractors who had a claim for work, etc., against a railroad company which was disputed, filed a mechanics' lien under chap. 529, Laws of 1870, upon which they brought suit to foreclose, and also filed a petition in bankruptcy against the company.

In an action against such contractors by another contractor and the company, for an equitable adjustment of the claims of the contractors, *held*, that this court could, by injunction, restrain the firm named from continuing the bankruptcy proceedings, and should do so, especially as the parties instituting such proceedings had invoked the jurisdiction of this court to foreclose the lien.

APPEAL from an order continuing an injunction.

The case is as follows : On the 9th December, 1871, Charles J. Pusey contracted with the Sodus Point and Southern Railroad Company to furnish it with rails, materials, rolling stock and equipment of the value of about $450,000.

On the 9th January, 1872, Patrick W. Bradley and Peter Nicholson contracted with said company to construct a portion of its roadbed. This contract was made on the basis of surveys and measurements made by Caleb A. Canfield, the company's chief engineer, and at prices fixed by Bradley and Nicholson, whereby it appeared that the cost of their work would not exceed $56,000. On the 16th of April, 1872, Charles J. Pusey contracted with the company to finish the road and to pay money to become due various contractors, among whom were Bradley and Nicholson.

Pusey was to receive his pay in bonds of the company. Bradley and Nicholson in cash, 80 per cent, on the 13th of each month, and the balance when their work was completed. The 80 per cent to be calculated from the monthly estimates of the company's engineer, and the 20 per cent by his final estimate on the finished work. By their contract Bradley and Nicholson were to finish their work by July 1st, 1872, or to forfeit $100 a day thereafter. After Pusey's contract of April 16, 1872, the monthly estimates of the company's engineer greatly exceeded the original estimates. Watkins, an engineer, was then employed to examine the work and protect Pusey's interest. Canfield refused to give Watkins access to his notes and

memoranda. The company then appointed Watkins assistant engineer, but still Canfield would not give him access to his papers. Canfield resigned on September 1st, 1872, to take effect October 22d, 1872, and on the latter day he ceased to act as the company's engineer. Prior to this he extended the time of Bradley and Nicholson to complete their contract to November 1, 1872. On the 10th October, 1872, he gave them another similar extension to December 1, 1872, and on October 15, 1872, he gave them a third extension to January 1st, 1873, all without the consent of the company. On October 22d, 1872, Canfield made a final estimate of Bradley and Nicholson's work, although it was not to be completed till the 1st January, 1873. Watkins now became chief engineer of the company. He had never been able to get the "cross-section" notes of Canfield, so he could not measure the work with absolute accuracy. From the best measurements he could make he concluded that Canfield's estimates were grossly incorrect and always in favor of the contractors and against the company. Altogether, Bradley and Nicholson have received $68,000 for work which was estimated at the outset at $56,000, but by Canfield's final estimate $30,000 more appears to be due them. · The company refuse to pay this sum without an additional measurement of the work. To compel payment, Bradley and Nicholson filed a mechanic's lien under chap. 529, Laws of 1870, which they proceeded to foreclose, and also filed a petition in bankruptcy against the company.

In neither of those actions was Pusey a party. He and the railroad company thereupon commenced this action, praying for an equitable adjustment of the claims of the contractors, and asking that judgment be rendered in favor of the party entitled to it, and in the meanwhile that Bradley and Nicholson be restrained from proceeding in either of these suits.

*Barney, Butler & Parsons* and *Thos. H. Hubbard*, for respondents. The court can restrain the parties from proceeding in their action to enforce this alleged mechanic's lien. *Mead* v. *Merrett*, 2 Paige, 402 ; *Daniese* v. *Allen*, 3 Abb. Pr. N. S. 212 ; *Vail* v. *Knapp*, 49 Barb. 299. The court can restrain the parties from proceeding under their petition in bankruptcy. *Schuyler* v. *Pellissier*, 3 Edw. Ch. 203 ; *Ex parte Christie*, 3 How. (U. S.) 292.

*S. S. Patridge*, for appellants Bradley and Nicholson.

*John J. Van Allen*, for appellant Caleb A. Canfield.

Pusey v. Bradley.

BRADY, J. If the claim of Bradley and Nicholson is not just, it can be contested by the company, in the proceeding to enforce the lien acquired by the laws of this State. Ch. 402, Laws of 1854, p. 1086, §§ 13, 14; Laws 1858, p. 324; Laws 1870, p. 1283. The plaintiffs are not therefore entitled to the continuance of the injunction granted in all respects. This conclusion is the result of several examinations of this controversy, so far as it is disclosed by the papers. If the company were in collusion with Bradley and Nicholson, or were friendly to them and their claim, it would be otherwise as to the plaintiff Pusey, but it is not so. The company, on the contrary, are adverse to them, and deny the validity of their alleged demand, having already appeared in the action brought to enforce it, and set up substantially the same matters in defense which are here relied upon. Whatever may be legally proved to show the falsity of the claim made, can be given in evidence in the action to enforce the lien. The company is therefore in a position to secure its own rights; and if successful, the apprehensions of the plaintiff will be groundless, but if otherwise, then the defendants Bradley and Nicholson must be regarded as justified in their proceedings so far as they may be successful. The plaintiff Pusey being only a creditor of the company, and the debtor having done nothing unlawful to his injury, either directly or indirectly, by collusion or otherwise, and the defendants Bradley and Nicholson having resorted to a legal mode of redress, in which the rights of the company can be protected, it seems that he is not in the relation to the parties, or either of them, which entitles him to demand from this court its equitable interference to the extent asked. It may here be remarked also, that in the action to enforce the lien there can be little doubt under the provisions of section 14 of the act creating it, *supra*, and of the Code, that the court in which it is pending has the right after issue joined to make any person a party who may be necessary to a full determination of all the equities involved. In regard, however, to the proceedings in bankruptcy a different result must ensue. The plaintiff Pusey has taken a large amount of the bonds of the company, and the extraordinary proceedings in bankruptcy are, if continued, well calculated to destroy the value of his securities and to deprive him of his compensation for meritorious services in constructing the road, and in that way contributing to the security of the defendants Bradley and Nicholson, assuming their lien to be good. The defendants Bradley and

Nicholson cannot avail themselves of their advantages acquired by the lien, and urge the bankruptcy of the company, which might be attended with disastrous consequences, at the same time in different tribunals upon a disputed claim. It would be against principles of natural justice and equity to allow such an oppressive course of procedure. It is true that it may be well questioned whether the creditor, who secures a preference by lien, is not obliged to surrender it in order to commence proceedings under the bankrupt act, but this question we are not called upon now to consider. Upon the propriety of restraining the party in these proceedings, the views expressed by Justice FANCHER, in this case, at special term, meet with our approbation. The parties to fraudulent or oppressive proceedings in another court may be enjoined. This is a distinction pointed out in *Schuyler* v. *Pelissier*, 3 Edw. Ch. 203, 205, and is recognized in *Ex parte Christie*, 3 How. (U. S.) 292. Justice STORY declared in the case last cited, that proceedings in a State court might be suspended or controlled, not by acting on the courts, but by acting on the parties through the instrumentality of an injunction or other remedial proceedings. And SUTHERLAND, J., in *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 17 How. 464, pronounced the same doctrine. See, also, decision of Justice INGRAHAM to same effect in same case, 6 Abb. Pr. 239. In this litigation the defendants Bradley and Nicholson and the company are already before this court in another action in reference to the subject-matter of this action, and at the instigation of the defendants Bradley and Nicholson, and there is, therefore, an additional reason why the control of parties should be exercised. They invoked the jurisdiction of this court, and must abide by it. By enjoining them from proceeding in bankruptcy, and permitting their action to enforce their lien to proceed, substantial justice will be done to all parties.

The order made at special term will be modified accordingly.

INGRAHAM, P. J., concurred.

*Order modified accordingly.*