MARYETTE RIX, Respondent, *v.* ARTEMUS L. HUNT, as Executor, etc., of SYLVESTER RIX, Deceased, Appellant.

*Claims against decedents should be scrutinized — gift* inter vivos *— evidence of delivery of — rebutting testimony — evidence of the donee as to possession — one having a similar claim is not "interested in the event" of the action — remoteness of the interest.*

Where claims are presented against the estate of a decedent, they should be scrutinized with more than ordinary care, in order to prevent, as far as possible, the allowance of unjust and fictitious demands against parties whose mouths are sealed by death.

In order to constitute a valid gift *inter vivos,* the donor must be competent to contract, there must be freedom of will, the gift must be complete with nothing left undone, the property must be delivered by the donor and accepted by the donee, and the gift must go into immediate and absolute effect. A gift *inter vivos* may, however, be supported, although there is no direct and positive proof of delivery.

Where it appeared that the donor, a bachelor aged eighty-two years, about eighteen months before his death stated to his niece, who had lived with and cared for him for more than seven years, that he wanted her to have certain notes belonging to him, which he described specifically, and it was further shown that, although the notes were not delivered at that time, they were soon after found in the possession of the niece, who retained them as the ostensible owner with the knowledge of the donor down to the time of his death, and it was also shown that the donor had said to a nephew that he did not have money enough nor property enough to pay his niece for what she had done, the court considered that there was substantial evidence of delivery which, taken in connection with the acts and declarations of the donor, created a presumption in favor of the validity of the gift, which, until overcome by satisfactory proof, afforded adequate justification for the inference that the gift had been completed in every essential particular.

The fact that a gift is made to one of the donor's nearest relatives, and is a natural one in view of the relation of the parties, is a matter to be considered in determining its validity.

Where a hostile witness testifies that, after the death of the donor, he heard the donee tell another person that she never had the notes in her possession and had never received any interest on them as hers, the donee is entitled to deny this statement, and her further statement that at the time of this interview the notes were in her trunk in her bedroom, is not inadmissible, under section 829 of the Code of Civil Procedure, as being in the nature of a transaction between the donee and the deceased donor.

The fact that a witness for the donee, who was also her brother, has a similar claim against the estate of the donor, and that he had made a statement that he had been advised by his counsel that if the donee could win her action he could win his, does not make him "a person interested in the event," within the meaning of section 829 of the Code of Civil Procedure, for, although the witness may be said to have an interest, that interest is not present and certain, but is uncertain, remote and contingent, and, therefore, is not of a character to disqualify him. In such a case the witness to be disqualified must not only be interested in the event of the action, but must be examined in his own behalf or interest in the sense that he will either gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action.

FOLLETT and GREEN, JJ., dissented.

APPEAL by the defendant, Artemus L. Hunt, as executor, etc., of Sylvester Rix, deceased, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Steuben on the 5th day of July, 1895, upon the report of a referee.

*Ernest W. Brown,* for the appellant.

*John F. Parkhurst,* for the respondent.

ADAMS, J.:

The plaintiff brings this action to recover the value of seven notes amounting in the aggregate to $2,638.98, and interest thereon, together with a roan cow of the value of $30, which she claims to own by gift from her uncle, the defendant's testator, Sylvester Rix.

The action was tried before a referee, who found that the notes and cow were the property of the plaintiff; that they were given to her by the testator prior to his death, and that they were taken from her possession by the defendant, as executor of the last will and tes-

.FOURTH DEPARTMENT, APRIL TERM, 1897.    [Vol. 16.

tament of Sylvester Rix, upon the claim that they were the property of the estate which he represented.

The contest before the learned referee was confined mainly to the plaintiff's right to the notes in suit, little or no evidence being given relative to the cow; and the principal argument addressed to this court upon the part of the defendant, is that the evidence was insufficient to sustain the referee in finding that the notes were delivered to the plaintiff by Sylvester Rix during his lifetime, under such circumstances and conditions as to establish a valid gift of the same within the well-established rules applicable to cases of this character.

The essential question, therefore, which we are called upon to review, resolves itself into one of fact, and imposes upon this court the duty of examining with care, and some degree of minuteness, the evidence which bears either directly or remotely upon the plaintiff's title to these notes. From such an examination of the record furnished us, we find the following facts established beyond all controversy, viz.:

That the testator was the owner, during his lifetime, of a farm consisting of 160 acres, situate in the town of Springwater, Livingston county, in this State, upon which he resided up to the time of his death, which occurred about the 9th day of December, 1892. He was a bachelor and about eighty-two years of age, his nearest relative being a brother, Lewis Rix, who was the father of the plaintiff, and who died in December, 1893, at the age of about ninety years, leaving the plaintiff, four other children and two grandchildren, his only heirs at law and next of kin, all of his own children being married, except the plaintiff, and these children and grandchildren, together with one other nephew, the son of a deceased sister, constitute the present heirs at law and next of kin of the testator.

Some nine years prior to the death of Sylvester Rix the plaintiff, at the request of her uncle, came to live with him upon his farm, where she continued to reside until the latter's death. During all of this time she cared for her uncle, performing the necessary housework, as well as considerable work upon the farm, such as milking the cows, feeding the pigs, gardening and assisting in the haying. She also assisted in nursing and caring for her uncle when he was sick. During the same period of time, the plaintiff's

brother, Clark Rix, worked his uncle's farm on shares. He did not, however, live upon the premises until the spring of 1891, when he moved into his uncle's house, where he remained until the death of Sylvester Rix.

In April, 1890, the testator executed to the plaintiff and her brother a deed of his farm, which was worth at that time about $4,000. He retained this deed in his possession until some three or four days prior to his death, when he delivered it to Clark Rix.

Clark Rix being sworn as a witness in behalf of the plaintiff, testified that early one morning in May, 1891, while his uncle was suffering from an attack of pneumonia, the latter called him and his sister into his room, saying that he desired to talk with them respecting the property he intended to give them. In this conversation he said that the roan cow was the plaintiff's and that he wanted her to have four of the notes in suit, specifically mentioning the same. The witness further testified that he then said to him, " Uncle, I do not think we can hold that property;" and that his uncle replied, " You can, because you will have possession of it." It does not appear, however, that at this time there was any manual delivery of the notes, but among those which Clark Rix says were mentioned by his uncle was one of $1,000, made by Alfred Leach; and Mrs. Leach testifies that in July, 1891, she went to the testator's house for the purpose of paying interest upon that note, at which time she was informed by the testator that he could not receive the interest because the plaintiff had the note; that it was hers, and that she was not in; but that when she returned he would fetch it over; and that the following morning he did bring the note to Mrs. Leach's house, when she paid him the interest thereon. Again, in July, 1892, Mrs. Leach went to the testator's house for a like purpose, when the plaintiff, at the request of her uncle, went into another room and brought out a pocket book containing the Leach note, upon which Mrs. Leach paid a year's interest, Clark Rix drawing a receipt therefor, which the testator signed.

Another witness by the name of William Barber, who was a nephew of the testator, testified that in October, 1892, his uncle said to him that he " hadn't money enough or property enough to pay her (the plaintiff) for what she had done." And that, at another time, he said to him that the plaintiff " had done well for him ; and

if money would pay her, she had got her pay." And, at about the same time, he stated to Clark Rix that he had given the plaintiff some more of the notes.

It is also made to appear that Sylvester Rix, during all the time that the plaintiff lived at his house, with the exception of a few days immediately preceding his death, slept in and occupied a bedroom off from and east of the sitting room ; that he kept his notes and securities in a tin box under the head of his bed, and that, during a portion of this time at least, the plaintiff had the notes in suit in a large pocket book, which she kept in her trunk in the parlor, north of the sitting room. Clark Rix further testifies that in November, 1892, one James Robinson came to his uncle's house to see a note upon which his father was liable as maker; that the witness stated to his uncle that Robinson was there and his object in coming ; that his uncle then remarked: " What notes I've got you'll find in that box — little trunk ;". that the witness thereupon took the notes out of the box, laid them upon the bed, picked out the Robinson note and allowed Robinson to look at it, after which it was returned to the envelope from which it was taken, and the tin box was set back under the bed. He further testifies that he examined carefully all the notes in the box at that time, and that none of the seven notes claimed by the plaintiff to have been given her by her uncle was among them. This witness further testifies that a few days prior to his uncle's death the latter spoke to him in regard to thirty dollars which he said had been paid upon the Marvin note, adding that the plaintiff had the note, and that the indorsement ought to be made thereon. He also at the same time spoke of the Van Dorn note, stating that some groceries which had been obtained the winter previous should be indorsed on that note, both of the notes referred to being among those claimed by the plaintiff.

On December 4, 1892, the testator executed his last will and testament, in and by which he gave and bequeathed to his brother, Lewis Rix, all of his personal property of every description.

It appears that at the time of the death of the testator all the notes in question were in the possession of the plaintiff, and that there was considerable other personal property which passed to Lewis Rix under his brother's will.

The evidence which has thus far been detailed was furnished

mainly by witnesses sworn in behalf of the plaintiff, to meet which a number of witnesses were called for the defense, who testified to admissions and declarations which they claimed to have heard the plaintiff make at various times, which were somewhat contradictory of her evidence, and were to the effect that she did not have the notes in her possession, and had not received the interest on them as hers. The admissions and declarations thus detailed were, however, denied by the plaintiff when she was called to the stand to give evidence in rebuttal, and it will be readily seen that the learned referee was consequently forced to ascertain and determine the truth of this controversy upon evidence which was conflicting in its character, and which demanded the exercise on his part of good judgment and careful analysis, in order to determine its preponderating weight and value.

In cases of this nature, where claims are presented against a deceased party, it is unquestionably well settled, by repeated adjudications, that the same should be scrutinized with even more than ordinary care in order to prevent, as far as possible, the allowance of unjust and fictitious demands against parties whose mouths are sealed by death. With this rule for our guide, in the case under consideration, and with the application of the closest scrutiny to the evidence contained in the record, we are, nevertheless, of the opinion that it is ample to sustain the findings of fact and conclusions of law adopted by the learned referee.

In saying this we assume that whatever title the plaintiff has to the property over which this controversy arises depends upon her establishing a valid gift thereof from the donor, her uncle, and to accomplish this, the gift being one *inter vivos*, there must be present five distinct elements in order to invest it with the quality of validity. These elements are : " *First*, that the donor must be competent to contract ; *second*, there must be freedom of will ; *third*, the gift must be complete, with nothing left undone ; *fourth*, the property must be delivered by the donor and accepted by the donee ; and *fifth*, the gift must go into immediate and absolute effect." (*Mercantile S. Deposit Co.* v. *Huntington*, 89 Hun, 465, 469.)

There is no pretense that the donor was at any time incompetent to execute a valid gift of his property, neither is it claimed that the

notes in suit were obtained by any coercive domination of his will power by the donee; but, as we understand the defendant's position, it is insisted that the gift was not complete, in that it did not go into immediate and absolute effect by actual delivery, and this contention brings us back to a consideration of the proper value which may attach to the evidence furnished by the plaintiff in support of her claim.

The defendant is undoubtedly correct in saying that there is no direct and positive proof of the delivery of the property in question, for, as has already been suggested, it is not claimed that the notes were handed over, or even that they were present at the early morning interview in May, 1891, but it does appear by evidence, which was satisfactory to the referee, that soon thereafter they were found in the possession of the plaintiff, who retained them as the ostensible owner, with the knowledge of her uncle, down to the time of his death.

This circumstance, of itself, is substantial evidence of delivery (*M. S. D. Co. v. Huntington, supra*), and when accompanied by acts and declarations upon the part of the donor, together with other circumstances, all tending in the same direction, it certainly was sufficient to create a presumption in favor of the validity of the gift which, until overcome by satisfactory proof, afforded adequate justification for the inference that the same had been completed in every essential particular. (*Grangiac* v. *Arden*, 10 Johns. 293; *Babcock* v. *Benson*, 11 N. Y. Supp. 455; *Hoffman* v. *Hoffman*, 6 App. Div. 84; *Bedell* v. *Carll*, 33 N. Y. 581; *Trow* v. *Shannon*, 78 id. 446.)

But this *prima facie* evidence of the delivery and completion of the gift found abundant support and strength in other circumstances and inferences with which the case abounds.

In the first place the gift was not an unnatural act upon the part of the donor, but, upon the contrary, was just what might have been expected of a just and generous person in the same circumstances. With the exception of a brother, whose decease was in all probability but a question of a year or two at most, the plaintiff was as nearly related to Sylvester Rix as any living being. She had come to him in his old age and had served him faithfully for nearly ten years. There is no evidence that she ever received any com-

pensation for the services thus rendered other than a half interest in the homestead, and the cow and notes in suit. All the other nephews and nieces of the donor were married and living by themselves, and no reason is furnished other than that of kinship, why they should share in the testator's bounty. Whatever claim they had growing out of this relationship had been recognized by the provision in the testator's will in favor of their father, and they ought to be slow of interference with the disposition made by their uncle of the remainder of his property, especially as that disposition was obviously prompted by a just desire to discharge an obligation which rested upon him, and which he had repeatedly recognized and declared his intention of fulfilling.

Having reached this conclusion in respect of the principal question brought to our notice upon this appeal, it only remains to consider one or two exceptions to the admission of evidence upon the trial.

Among the witnesses called by the defendant was Arnold Kirkendall, who testified that in February, 1893, he heard the plaintiff tell one Mark Rix that she had never had these notes in her possession and had never received any interest on them as hers. The plaintiff, upon being recalled to the stand, after denying the making of such statement, was asked where the notes were at the time of the interview between her and Mark Rix — it being conceded that he was at her house upon one occasion, in company with Kirkendall. This question was objected to on the ground that it was incompetent, under section 829 of the Code of Civil Procedure. The objection was overruled and the plaintiff answered that they were in her trunk and that her trunk was in her bedroom. A motion was thereupon made to strike out the answer upon the ground already stated, which was denied, and the defendant's counsel duly excepted to both the admission of the evidence and to the refusal to strike out the same.

These exceptions, we are persuaded, present no error. We are unable to see how the evidence objected to can be regarded as in the nature of a transaction between the plaintiff and her uncle, inasmuch as it related to her possession of the notes in suit some two months subsequent to the death of the latter. But, however this may be, it was certainly admissible for the purpose of corroborating

her denial of the admission which she was said to have made to Mark Rix, for if she had the notes in her trunk at that very time, it is hardly conceivable that she would be declaring that she had never had possession of them.

When Clark Rix was called to the stand as a witness for the plaintiff, he was subjected to a preliminary examination by the defendant's counsel, during which he stated that he had a law suit pending with the defendant growing out of a claim made by him to certain personal property which was upon his uncle's premises at the time of his decease, and that he had said to the defendant he had been advised by counsel that if the plaintiff won this action he could win his. The defendant's counsel thereupon objected to this witness giving any evidence of personal transactions with the decedent, upon the ground that he was interested in the event of the action, and that his evidence was, therefore, incompetent under section 829 of the Code of Civil Procedure.

It is, of course, conceded that the witness was in no sense a party to this action, and consequently, if disqualified from testifying in behalf of the plaintiff, it must have been by reason of his interest in its event. It becomes important, therefore, to refer to the section of the Code which is invoked in support of the defendant's contention, in order to determine how far it sustains him therein. Its language, so far as applicable to this particular case, is as follows : " Upon the trial of an action or the hearing upon the merits of a special proceeding, a party or person interested in the event, or a person from, through or under whom such a party or interested person derives his interest or title, by assignment or otherwise, shall not be examined as a witness in his own behalf or interest, or in behalf of the party succeeding to his title or interest, against the executor, administrator or survivor of a deceased person."

And it would seem to follow that this witness was not disqualified unless he was not only interested in the event of the action, but was also examined in his own behalf or interest.

It is probably undeniable that the witness was, in a sense, interested in the event of the action, and, if he believed what he had stated to the defendant, he was, perhaps, in the same sense, examined in his own behalf ; but this is not the sense in which the word " interest " is used in this section.

The test of interest which disqualifies a witness not a party, under this section, is thus stated by Mr. Greenleaf in his work upon Evidence : " *The true test of the interest* of a witness is that he will either gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action. It must be a present, certain and vested interest, and not an interest uncertain, remote or contingent." (1 Greenl. on Ev. § 390.)

And this test has been frequently recognized and adopted by the courts of this State. (*Hobart* v. *Hobart,* 62 N. Y. 80 ; *Nearpass* v. *Gilman,* 104 id. 506 ; *Wallace* v. *Straus,* 113 id. 238 ; *Allis* v. *Stafford,* 14 Hun, 418 ; *Ely* v. *Onte,* 19 Hun, 35.)

Certainly the interest of Clark Rix, in the event of this action, was, by no means, present and certain. It was altogether uncertain, remote and contingent, and any judgment which might be rendered herein could not be used as evidence in his action. However much he may have relied upon the advice which he says had been given, and however much he may have been influenced by such advice in giving his testimony, he was not interested in the sense in which that word is used in the section adverted to. And whatever interest he did have did not appear to prejudice him in the opinion of the learned referee, who takes occasion to say that he impressed him as a very candid witness, whose testimony was consistent with itself.

We find no other exception in the case which seems to demand any attention, and our conclusion upon the whole case is that the judgment appealed from should be affirmed.

HARDIN, P. J., and WARD, J., concurred; FOLLETT and GREEN, JJ., dissented.

FOLLETT, J. (dissenting):

This action was begun February 15, 1894, to recover the value of seven promissory notes and of a roan cow, which the plaintiff alleged that she owned, and alleged that they were converted and taken from her possession by the defendant on the 13th day of February, 1893. The defendant, by his answer, denied that the plaintiff was the owner of the property and alleged title in himself as executor.

The following is a description of the notes as described in the complaint and by the evidence:

| | Maker. | Payee. | Date of note. | Amount for which given. | Due thereon Feb. 13, 1893. |
|---|---|---|---|---|---|
| No. 1... | J. R. Wetmore.... | Sylvester Rix...... | Mar. 19, 1883... | $200 00 | $287 56 |
| No. 2... | Hyde Marvin ..... | "       " ..... | Oct. 1, 1884.... | 94 00 | 117 94 |
| No. 3... | Allen & Whitlock. | "       " ..... | Aug. 4, 1886.... | 450 00 | 486 00 |
| No. 4... | Wetmore & Son... | "       " ..... | Sept. 6, 1886... | 360 00 | 422 37 |
| No. 5... | Alfred Leach ..... | "       " ..... | April 1, 1888 .. | 1,000 00 | 1,034 02 |
| No. 6.. | J. S. Van Dorne... | "       " ..... | Nov. 1, 1889... | 200 00 | 237 16 |
| No. 7... | Myron Leach ..... | "       " ..... | Aug. 14, 1891.. | 50 00 | 53 93 |

Note No. 3 was payable to the order of Sylvester Rix, but whether the others were payable to order or bearer does not appear.

Sylvester Rix was a bachelor, owning and occupying a farm of 160 acres in the town of Springwater, N. Y. He owned no other realty. In April, 1890, he executed a deed of his farm to Maryette Rix and Clark Rix, who are brother and sister and children of Lewis Rix. This deed he retained in his possession until Saturday, December 3, 1892, when he delivered it to the grantees therein named. December 4, 1892 (Sunday), he duly executed his last will, by which he bequeathed all his personalty to his brother, Lewis Rix, of the town of Canadice, and appointed Artemus L. Hunt his executor. On Tuesday, December 6, 1892, he died at the age of eighty-two years, leaving his said brother and William Barber, a son of a deceased sister, his only heirs and next of kin. February 6, 1892, the will was duly admitted to probate and letters testamentary issued thereon to the defendant in this action, and, on the 13th of February, 1893, the defendant, with the aid of the appraisers appointed by the Surrogate's Court, appraised the personalty of the testator. The plaintiff at that time had in her possession the seven notes before described, claiming to own them, but, upon a peremptory demand, handed them to the defendant and they were inventoried, and subsequently the defendant, as executor, collected them in the due course of administration.

The referee found that notes Nos. 1, 3, 4 and 5 and the roan cow were given to the plaintiff by Sylvester Rix in May, 1891, and that in October, 1892, he gave her notes Nos. 2, 6 and 7, and that there were due on the notes the amounts alleged in the complaint, except that $30 had been paid on No. 2 to Sylvester Rix in his lifetime, leaving its value at $87.94, and that the value of the roan cow was

$30, and directed a judgment in favor of the plaintiff for the value of the notes and of the cow, with interest, amounting to $2,851.85, with costs.

The defendant served and filed exceptions to the report, and after entry of the judgment appealed therefrom, and made a case which contains all the evidence given on the trial.

The sole question involved in this action is whether the plaintiff established by legal and sufficient evidence that her uncle, Sylvester Rix, gave to her the seven notes and the cow, the value of which this action is brought to recover. It has long been the rule in this State, so often declared that it has become elementary, that whoever claims title to property by gift must establish it by evidence that is clear, convincing, strong and satisfactory. In such cases the law "does not so much consider the bearing or hardship of its doctrine upon particular cases, as it does the importance of preventing a general public mischief which may be brought about by means, secret and inaccessible to judicial scrutiny, from the dangerous influences arising from the confidential relation of the parties." (Story's Eq. Juris. § 310 ; *Case* v. *Case,* 49 Hun, 83.) The rule in such cases is that the gift must be established by evidence possessing the highest degree of probative force. All the authorities agree in this, though the rule is expressed in various forms. (*Scoville* v. *Post,* 3 Edw. Ch. 203 ; *Grey* v. *Grey,* 47 N. Y. 552 ; *Grymes* v. *Hone,* 49 id. 17 ; *Shakespeare* v. *Markham,* 72 id. 400 ; *Lewis* v. *Merritt,* 113 id. 386 ; *Ridden* v. *Thrall,* 125 id. 572 ; *Devlin* v. *Greenwich Savings Bank,* Id. 756 ; fully reported, 35 N. Y. St. Repr. 922 ; *Van Vleet* v. *McCarn,* 18 id. 73 ; *Gaylord* v. *Gaylord,* 7 id. 703 ; *Jennings* v. *Davis,* 31 Conn. 138 ; Pom. Eq. Juris. § 1146.)

In *Grymes* v. *Hone* (*supra*) it was said : "As there is great danger of fraud in this sort of gift courts cannot be too cautious in requiring clear proof of the transaction. This has been the rule from the early days of the civil law (which required five witnesses to such a gift) down to the present time."

In May, 1891, Sylvester Rix, the alleged donor, was very ill of pneumonia, at which time he was eighty-one years of age. This sickness was testified to by the plaintiff, by Clark Rix, her brother and principal witness, and by Grace Rix, a niece of the plaintiff, who was sworn in behalf of the plaintiff and testified : "Am

daughter of Clark Rix, and in May, 1891, lived with them (the plaintiff and her father) at Uncle Sylvester's when he had an attack of pneumonia. I remember father calling her (plaintiff) early one morning and she went down stairs. Uncle was very sick at that time, but recovered and lived for more than a year after that, and was right around attending to his usual business."

The only transaction between the alleged donor and the plaintiff in which anything was said or done about giving her the property in suit occurred during this illness. At this alleged interview Sylvester Rix, the plaintiff, and Clark Rix were alone present, and the only evidence describing the transaction was given by Clark Rix, who testified: "When he (Sylvester Rix) was sick in May he called me early one morning and said, 'I want you to call Maryette.' I called her and we went into his room. He said, 'I want to talk with you and Maryette with reference to what I want to give Maryette and you.' * * * He said, 'I want her to have some notes.' He said that the roan cow was hers, and that he wanted her to have the Leach note, the two Wetmore notes and the Allen and Whitlock note. I said to him, 'Uncle, I do not think we can hold that property.' He said, 'You can because you will have possession of it. I will ask Hunt when he comes up.' Hunt came up that morning and he and Uncle had a conversation there that morning * * *.

"The conversation about the property that I lay claim to under gift took place at the same time as the conversation in which my sister claims that the notes were given to her. I went up stairs and brought her down to hear that conversation about four or five o'clock in the morning. The only persons who heard this conversation were my sister, Mr. Rix and myself. He said he wanted to give her some notes. He named four different notes and he said also the roan cow. *I did not see the tin trunk that morning, and no notes were present. He didn't hand any notes to her. He said he was prostrated and it might go hard with him. The only conversation I ever heard with Mr. Rix about giving away these notes was at five o'clock in the morning when she was present, and afterwards when Hunt was present, and none of the notes on either occasion were present or delivered to her. Uncle got around after that.*"

This is the only direct evidence given in behalf of the plaintiff

tending to show that Sylvester Rix gave the property to the plaintiff, and this evidence falls far short of establishing a gift. The cow was on the farm and remained there afterwards as before. The notes were not present and were not delivered to the plaintiff. Delivery of a subject of a gift is essential to constitute a legal gift. The alleged donor did not surrender possession of the notes or of any of the property, but retained all in his possession as before. It is conceded that thereafter and until his death Sylvester Rix received the interest on those notes as before. The plaintiff testified : " I never claimed that I collected interest on those notes." The only corroborative evidence tending to support a gift of these notes was given by the widow of Alfred Leach, who testified that in July, 1891, she called on Sylvester Rix to pay the interest on her husband's note and that he then said that the note was the plaintiff's; that afterwards Mr. Rix brought the note to her house and that she paid the interest to him, and that in July, 1892, she called to pay the interest then due and " Mr. Rix told Maryette to get the note. We were in the sitting room. Maryette went into the parlor and brought back the note with her. I counted out fifty dollars, handed it to Clark Rix and I asked him to indorse it on the note and he done so. Then I asked him for a receipt and he wrote the receipt, and Mr. (Sylvester) Rix signed it." Clark Rix testified that Sylvester Rix signed the receipt.

Mr. Whitlock testified that the payments of the note of Allen & Whitlock for $450 made subsequently to May, 1891, were made to Sylvester Rix, but there is no occasion for calling attention to the fact that after this alleged gift in May, 1891, the plaintiff had no control over the notes, for she testified that she never claimed to have received anything on them.

Mark Rix, a brother of the plaintiff, testified that shortly after the death of Sylvester Rix he asked the plaintiff : " Have you ever had them notes in your possession and received interest on them as yours," and she said she never had. This conversation was at plaintiff's house the day before the will was proved.

Arnold Kirkendall testified that he was present at this conversation and that she said that she never had the notes in her possession and never received any interest on them. The same witness testi-

fied on another occasion that the plaintiff said that the notes had never been "delivered up to her or given to her."

Harriet Briggs, a sister of the plaintiff, testified that she heard the plaintiff say that she had never had the notes in her possession or received the interest on them previous to the death of Sylvester Rix.

Dr. Hunt, the executor, testified that the plaintiff told him that her uncle never delivered the notes to her in his lifetime and that the reason why she did not collect the interest on the notes was because she had nothing to do with them except that she knew where they were.

A further statement in the testimony is referred to as corroborating Clark Rix. He testified that James Robinson called at the house about a week before the death of his uncle and asked to see the note of his father, that his uncle said : "What notes I've got you'll find in that box." The witness then got out the box and took the notes from a yellow envelope, laid them on the bed and picked out the Robinson note, and that none of the notes claimed by the plaintiff were among the notes in the envelope. Mr. James Robinson was not called and Clark Rix corroborates himself.

There is not one word of testimony tending to show any transaction between Sylvester Rix and the plaintiff in which he gave to her notes Nos. 2, 6 and 7, amounting to nearly $600. The only evidence upon which it is pretended to found a gift of these notes is that of Clark Rix, who testified that, "In the fall of 1892, he said that he had given my sister some more of those notes. He said that she was an old woman for one of her age, and she had no home unless he provided for her. There was nobody to look after her and he would provide for her. He said there was no one to provide for her and that she would have to be taken care of, for she had no home of her own. He spoke of this Marvin note; said that there was thirty dollars that Marvin had paid him that should be indorsed; that sister had the note, and that the money had been used in fixing the house."

It is upon such slender evidence that this claim is sought to be supported, and by a witness who characterizes his relation to the action and his interest in the result as follows : "I have a lawsuit pending with the executor of the Sylvester Rix estate. I have made a claim to certain personal property that was on the premises at the time of his decease, claiming that he had given it to me. I have

stated to Dr. Hunt that I had been advised by counsel that if Mary-
ette won I could win."

- After the death of Sylvester Rix these notes were in the posses-
sion of the plaintiff until the estate was inventoried, and that is
urged as a circumstance tending to show a gift. The plaintiff had
been a trusted domestic of her uncle for nine years. She knew where
his notes were kept, and from time to time, when he had occasion to
use them, he quite naturally sent her for them. He was old and
feeble, and she was young and strong, and trusted by her uncle.
After the death of the uncle this plaintiff and her brother were in
charge of the household and the box where the notes were kept was
not locked, and the fact that she had possession of these notes after his
death has no probative force. (*Conklin* v. *Conklin*, 20 Hun, 278;
*Grey* v. *Grey*, 47 N. Y. 552; *Matter of Bolin*, 136 id. 177; *Ken-
ney* v. *Public Administrator*, 2 Bradf. 319; *Drischler* v. *Van
Den Henden*, 17 J. & S. 508; *Alsop* v. *Southhold Savings Bank*,
50 N. Y. St. Repr. 672.)

It is urged that this plaintiff performed unusual services outside
of ordinary household duties for her uncle. The evidence is to the
contrary. It is true that she sometimes milked the cows, drove them
to and from the pasture; but during the period when she was per-
forming these services Clark Rix was running the farm on shares,
and it was for him and not her uncle that these services were ren-
dered. So far as it appears the duty of the plaintiff in the house-
hold of her uncle was simply to care for him and herself. Whether
she was paid or not does not appear, but she, at least, was given one-
half of his farm, the validity of which conveyance is not ques-
tioned. If it be conceded that every word of the testimony offered
in behalf of this plaintiff is true, it fails to establish a cause of action.
It is as well settled as anything can be, that a gift made in anticipa-
tion of death, is absolutely revoked by the recovery of the donor
from the peril in the presence of which he made the gift. The fact
that the gift claimed by the plaintiff was made in apprehension of
death is clearly proved by the evidence given in her behalf, and it is
also clearly proved by her witnesses that her uncle recovered from
that sickness, lived more than a year, and took charge of his busi-
ness as usual. This was a revocation of the gift. The fact that her
uncle supposed that he had some personal property to dispose of,

and that he made a will two days before his death, bequeathing all of his personalty to his only surviving brother, is some evidence that he believed that he had personalty to bequeath. On look‑ ing into the inventory we find that he held notes amounting to more than $3,500, and Clark Rix testified on the trial that he and this plaintiff claimed all of them as gifts, except about $600, as the result of the transaction of May, 1891. His claim of course can be sup‑ ported only by the evidence of his sister whose claim he supports in this action. This witness is not a disinterested one, but is as directly interested in the result as though he were testifying in his own behalf.

In *Matter of Farian* v. *Wiegel* (76 Hun, 462) and in *Ridden* v. *Thrall* (125 N. Y. 572, 576) it was held that a gift, the validity of which depended upon the uncorroborated evidence of the wife of the donee, was not proved by plain and satisfactory evidence. In the case at bar the gift is supported solely by the evidence of a person who testi‑ fied that he was directly interested in the result because he expects to succeed in his action against the executor by proving by the plain‑ tiff in this action the transaction of May, 1891. Many cases might be cited in respect to the kind of evidence required to support a gift asserted for the first time after the death of the alleged donor, many of which are referred to in *Matter of Manhardt* (17 App. Div. 1), and others will be found in the treatise upon gifts in the 2d volume of the last edition of Professor Schouler's Treatise on the Law of Personal Property, whose discussion of this subject is the ablest and fullest which I have found.

The referee erred in denying the defendant's motion made at the close of the plaintiff's case that the complaint be dismissed, and the defendant's exceptions to the conclusions of law were well taken. There are exceptions to the admission of evidence given in behalf of the plaintiff which, I think, were well taken, but having reached the conclusion that the evidence fails to establish a cause of action it is unnecessary to consider them.

The judgment should be reversed and a new trial granted, with costs to abide the event.

GREEN, J., concurred.

Judgment affirmed, with costs.