(174 App. Div. 131)

### DURYEA v. KNAPP (three cases).

### POLHEMUS v. SAME.

(Supreme Court, Appellate Division, Second Department.　July 28, 1916.)

1. TRUSTS ⚖59(1)—REVOCATION.
　　Where savings deposits at the direction of the depositor are deposited in trust for another, such trust is revocable until completed by some unequivocal act or declaration of the creator of the trust.
　　[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 78, 79; Dec. Dig. ⚖59(1).]

2. GIFTS ⚖74—GIFTS CAUSA MORTIS.
　　Gifts causa mortis may be revoked at any time before death of the donor.
　　[Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 115–118; Dec. Dig. ⚖74.]

3. GIFTS ⚖82(1)—GIFTS CAUSA MORTIS—REVOCATION.
　　Evidence *held* sufficient to show that a transfer of the decedent's bank account in trust for plaintiff was merely a conditional gift causa mortis, which was expressly revoked prior to death of depositor.
　　[Ed. Note.—For other cases, see Gifts, Cent. Dig. § 154; Dec. Dig. ⚖82(1).]

Appeal from Special Term, Rockland County.

Consolidated actions by Eliza F. Duryea and by Mabel D. Polhemus against Jennie M. Knapp, as administratrix.　Judgment for plaintiffs, and defendant appeals.　Reversed and rendered.

Argued before JENKS, P. J., and CARR, STAPLETON, RICH, and PUTNAM, JJ.

Lyman Ward, of New York City, for appellant.
Frank Comesky, of Nyack, for respondents.

PUTNAM, J.　These appeals raise the question whether savings bank trusts were irrevocably made at or before 1910, or were subject to revocation during the lifetime of Mrs. Jane Ann Conklin, the alleged donor.　Two of the savings bank accounts (the subjects of suit No. 3) were opened in 1894 in the form of "Jane Ann Conklin in trust for Eliza F. Duryea."　The other three accounts (suits 1, 2, and 4) were similarly changed in October, 1905.　An account in the Emigrant Industrial Savings Bank was then changed in favor of Mrs. Polhemus, which is the subject of suit No. 4.　The banks then returned all of these bank books to Mrs. Conklin; and the books remained in her possession, in a safe deposit box in New York, which was rented in the joint names of Mrs. Conklin and Mr. Duryea (who was Mrs. Conklin's confidential agent) up to February 8, 1910.　On that date, when Mrs. Conklin was 86 years old, this safe deposit box was given up, and Mr. Duryea brought these bank books to Nyack, where Mrs. Conklin then boarded in Mr. Duryea's house.　Mr. Duryea testified that he took the four bank books upstairs to Mrs. Conklin's room, and there handed them to her and left them with her; that later Mrs. Conklin called down from over the banister to Mr. Duryea, and when he came up in

response she handed him the books, which she said belonged to Mrs. Duryea and to Mrs. Polhemus, the plaintiffs herein; that she wanted him to take the books down and put them in his box. Although Mrs. Duryea and Mrs. Polhemus were both in the house at the time, Mrs. Conklin did not herself give them the bank books. After this time, Mr. Duryea kept exclusive possession of the books, although Mrs. Conklin continued to draw the interest and use it for her own purposes. Mr. Duryea testified, also, that he had handed the books that night to Mrs. Duryea and Mrs. Polhemus, who handed him back the books for safe-keeping. At all times Mrs. Conklin continued to draw the interest on these accounts on her own order, and to use the proceeds for her own purposes. On February 13, 1913, on the petition of Mrs. Duryea, one of the plaintiffs, Mrs. Conklin, was committed to the State Hospital for the Insane at Middletown, N. Y., where she remained two months under observation. The hospital authorities then voluntarily released her, on the ground that she was not and had not been insane. The lunacy proceedings were therefore vacated. After Mrs. Conklin's return to Nyack, but not to the residence of Mrs. Duryea, on May 26, 1913, she served formal notices of revocation of the alleged trusts, duly acknowledged, upon the defendant banks. She died September 26, 1914. In the interval of 16 months between her attempted revocation and Mrs. Conklin's death, the plaintiffs took no proceedings to impress a trust upon these bank accounts.

To affirm the judgments in plaintiffs' favor, we must hold that the change in the savings bank accounts, with Mrs. Conklin's subsequent conduct, especially the circumstances at Nyack, when she is said to have declared to Mr. Duryea that the books were the property of the plaintiffs, constituted a valid gift, absolute and irrevocable. But here we have the deceased, at a time when she had been proved to be sane and competent, asserting a right to revoke these dispositions by a formal written instrument. Obviously the gift now claimed did not exist before February, 1910, since the books were still under her control, which Mr. Duryea recognized by bringing back the books and delivering them to her. While Mr. Duryea, the husband of one of the plaintiffs, testified he delivered to her and Mrs. Polhemus the respective books, which testimony was not within the prohibition of Code of Civil Procedure, § 829, yet it is singular that Mrs. Conklin herself made no such gift to these ladies in the same house. She continued thereafter to draw the interest on her own orders, an act indicating that she had not divested herself of the beneficial control of the deposits. Mrs. Conklin's attitude and intent as to this transaction strongly appear from her accusations of Mr. Duryea, before the end of 1910, that he had deprived her of her property, when she once came to the window and exclaimed, "He won't give me my bank books." As late as 1912, Mrs. Conklin was asking for these books, which Mr. Duryea withheld from her. Mr. Duryea says he did it, not because she had irrevocably disposed of them by gift to his wife, but "because I didn't think that she was in a condition to have them." Even in March, 1913, Mr. Duryea admitted that he was caring for the books for Mrs. Conklin.

[1] The deposits in trust for the plaintiffs were not irrevocable until

completed by some unequivocal act or declaration. Matter of Totten, 179 N. Y. 112, 71 N. E. 748, 70 L. R. A. 711, 1 Ann. Cas. 900. Deceased showed an aversion to making a will. It was natural for her to think of these bank books as a substitute for a legacy by will. Her intent to make a gift causa mortis finds support in a query in her handwriting on the last page of her memorandum book:

"Can 1 draw on money in trust when I was advised to put it there as it was better than a will in case I should want to use it?"

[2, 3] She must have so looked upon these dispositions. She exercised the power to revoke, which can be done with gifts causa mortis. Bliss v. Fosdick, 86 Hun, 162, 173, 33 N. Y. Supp. 317. In view of the long-settled rules rigidly enforced to protect estates against gifts first asserted after death of the donor, we think the testimony for plaintiffs did not sufficiently establish their title. On the contrary, the circumstances point to a conditional gift, not taking effect before death, and hence subject to revocation. The instruments of May 26, 1913, exercised the power to revoke, unless Mrs. Conklin had already irrevocably conferred title. In view of all the testimony, we are constrained to conclude that decedent had never completely given up her control and. dominion over this property, so that she had title thereto at her death.

I advise that the findings of fact numbered 2 in suits Nos. 1, 2, and 3, and the finding numbered 3 in suit No. 4, be severally reversed, and in lieu of such findings a new one be made by us "that said Jane Ann Conklin did not divest herself of dominion, control, and custody over said bank books, but thereafter retained the same, and on May 26, 1913, lawfully and effectively revoked said tentative change in said bank accounts, and gave due notice of such revocation to said banks, so that when she died she had full title thereto"; that this court, upon this appeal, accordingly, reversing the conclusions of law by the learned court at Special Term, make conclusions of law in favor of the appellant, decreeing to her, as administratrix, the said bank accounts, with costs. All concur.